IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT  KNOXVILLE

DECEMBER 1994 SESSION

FILED

July 17, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,

Appellee

vs.

MARVIN K. FERGUSON,

Appellant

No. 03C01-9406-CR-00235

WASHINGTON COUNTY

Hon. Lynn W. Brown, Judge

(DUI)

FOR THE APPELLANT:

Dennis Tomlin
Attorney at Law
627 Second Avenue, South
Nashville,TN 37210

FOR THE APPELLEE:

Charles W. Burson
Attorney General & Reporter

Christina S. Shevalier
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

David Crockett
District Attorney General

Joe C. Crumley,Jr.
Asst Dist. Attorney General
P.O. Box 38
Jonesborough, TN. 37659

OPINION FILED: _____

**AFFIRMED**

Robert E. Burch
Special Judge

**OPINION**

The appellant was convicted by a jury of the criminal offense of driving a motor vehicle while intoxicated (second offense). The trial court sentenced the appellant to eleven months, twenty-nine days in the county jail, suspended after service of forty-five (45) days, and fined him one thousand eight hundred dollars.

Appellant presents seventeen issues for review by this court. Appellant has failed to include in his brief any argument relating to issue numbers 6, 9, 11, 12, 13, 14, 15, 16, and 17. Accordingly, these issues are waived. Rule 10(b) *Rules of the Court of Criminal Appeals*. In addition, Appellant has failed to cite any authority whatever in his argument concerning issues 7 and 8. These issues are also waived. Rule 10(b) *Rules of the Court of Criminal Appeals; State v. Dickerson* 885 S.W.2d 90 (Tenn. Crim. App. 1983).

The remaining issues are:

1). Did the trial court err in refusing to dismiss the indictment on the ground that there was no probable cause for the arrest of the appellant for the offense of driving under the influence of an intoxicant?

2, 3, 4 and 10). Were the appellant's constitutional and statutory rights violated by the jailing of Appellant without a written order and the failure of the arresting officer to take the appellant without unnecessary delay before a committing magistrate so that the appellant could be examined in his present state of sobriety by the magistrate; told of his right to a breath alcohol test and allowed to be released from jail in order to obtain a blood alcohol test on his own?

5). Were Appellant's constitutional rights violated by the destruction and/or suppression of the video tape made of the

Appellant on the night of his arrest when the attorney for Appellant had requested that same be preserved?

We find that Appellant's failure to preserve any record of a hearing and ruling on the motions concerning the first two issues constitutes a waiver of any error. The final issue is not found to constitute reversible error. Accordingly, we affirm.

**FACTS**

Officer Murray of the Johnson City Police Department was on patrol when he encountered a van parked on the apron on the on-ramp to Interstate 181 with its engine running. It was approximately 4 a.m. and the driver appeared to be slumped over the steering wheel. The officer approached the vehicle and woke up the driver, who was Appellant. The officer noticed a strong smell of an alcoholic beverage about Appellant and also noticed that Appellant's speech was slow and "sort of slurred". Field sobriety tests were administered to Appellant, which he failed to perform satisfactorily. Appellant was arrested and taken to the police station where he refused a breath alcohol test. When at the police station, Appellant apparently performed additional field sobriety tests while being video taped. The video tapes were inadvertently taped over before they could be viewed by counsel for the defense.

**ANALYSIS**

In his first issue presented for review, Appellant submits that the trial court erred in refusing to dismiss the indictment in this case because there was no probable cause for the arrest of the defendant for D.U.I..

Appellant filed a motion to dismiss the indictment or suppress the evidence on July 9, 1993, three days after indictment. The technical record contains no ruling of the trial court on said motion. The transcript of the trial likewise

3

contains no such ruling. Motions to dismiss based upon defects in the institution of the prosecution and motions to suppress are required to be raised before trial. Rule 12(b) *Tenn. R. Crim. P.* If these motions are not raised prior to trial, they are waived. Rule 12(f) *Tenn. R. Crim. P.* The mere filing of a motion to suppress is not sufficient to raise an issue for the court to decide. The proponent must bring the motion to the attention of the trial judge and obtain a ruling thereon; otherwise the issue is waived. *State v. Burtis*, 664 S.W.2d 305 (Tenn. Crim. App. 1983); *Tenn. R. Crim. P.* 12(f). In this case, the defendant never sought a ruling on his motion.

In addition, if the record contains no ruling by the trial court on the motion, the trial court cannot be found in error. See *State v. Walker* 910 S.W.2d 381 (Tenn. 1995).

The issue is waived.

### Delay in appearance before a magistrate

In issues 2, 3, 4 and 10, Appellant complains that the police incarcerated him without a written order and then delayed in taking him before a magistrate resulting in a loss of his opportunity to be advised of his right to a blood test in sufficient time to have a meaningful test done or to be released (apparently on bail) within a time which would have allowed him to have a blood test done on his own.

The motion to dismiss was filed on July 9, 1993. No hearing of the motion appears in the transcript. No ruling of the trial court appears in the transcript. No order denying the motion to suppress appears in the technical record. The facts upon which Appellant's motion is based have never been established by proof. Allegations contained in pleadings are not evidence. *State v Roberts* 755 S.W.2d 833 (Tenn. Crim. App. 1988).

As has been stated in reference to issue number 1, above, the failure of the appellant to raise this issue prior to trial

4

and obtain a ruling thereon amounts to a waiver of the issue. *State v. Burtis*, 664 S.W.2d 305 (Tenn. Crim. App. 1983). We are well aware that the trial court stated, on page 178 of the trial transcript, that the matter of the defendant going before a "judge or clerk or anything like that" had already been ruled on. The problem is that the hearing and the ruling of the trial court, if they occurred, have not been preserved in the record on appeal. As far as this court is concerned, the hearing and ruling never occurred. We certainly cannot review the same for correctness. The failure of counsel to include these proceedings in the record have precluded any appellate review.

The issue is waived.

### Destruction of Video Tape

In his fifth issue presented for review, Appellant submits that the inadvertent erasure of the video tape of Appellant's booking and performing field sobriety tests constitutes a violation of Appellant's constitutional right to due process of law in that material evidence concerning this case has been destroyed.

No record of a pre-trial hearing and ruling on this exists either; however, the trial judge allowed proof to be developed and arguments made concerning this issue during the trial. The ruling of the trial judge can be found in the record of the trial. We must assume, therefore, that the trial judge allowed this motion to be made during the trial and held that relief from the waiver provision of Rule 12(f), *Tenn. R. Crim. P.,* should be allowed in this instance. Accordingly, we will deal with the merits of Appellant's issue presented on appeal.

There are two types of instances in which the state can be sanctioned for loss or destruction of video or audio tapes which are material to the subject matter of the trial. The first is the loss or destruction of the taped statement of a witness to which a defendant is entitled under the Tennessee Jencks Act

5

(Rule 26.2 *Tenn. R. Crim. P.*).  This may result in the state being in violation of Rule 26.2.  The sanctions for said violation are set out in the Rule as follows:

> (e) Sanction for Failure to Produce Statement. If the other party elects not to comply with an order to deliver a statement to the moving party, the court shall order that the testimony of the witness be stricken from the record and that the trial proceed, or, if it is the attorney for the state who elects not to comply, shall declare a mistrial if required by the interest of justice.

In a situation involving loss/destruction of a recording of Jencks material, there exists a higher burden upon the State to preserve the evidence.  The State must use due diligence in obtaining a statement and providing it to a defendant.  *State v Cannon* 661 S.W.2d 893, 899 (Tenn. Crim. App. 1983).  This duty extends not only to material in the prosecutor's immediate custody, but also to statements in the possession of law enforcement officers participating in the case. *State v Hicks* 618 S.W.2d 510,514 (Tenn. Crim. App. 1981).  In cases involving Jencks material, the imposition of sanctions do not necessarily rest upon a showing of bad faith.  Any intentional withholding or destruction of statements may be viewed as a violation of Rule 26.2 for which appropriate sanctions may be applied. *State v Jim Inman* (unreported) No. 03C01-9201-CR-00020 Tenn. Crim. App. at Knoxville, opinion filed November 23, 1993.

The second type is the denial to a defendant of due process of law by the State losing or destroying evidence which might exculpate the defendant.  This line of cases is based upon *Brady v. Maryland* 83 S.Ct. 1194, 1197, 373 U.S. 83,88, 10 L.Ed 2d 215 (1963).

Since this case involves a video tape which was not a recording of Appellant's statement, this issue concerns the second type of case.  The cases dealing with failure to comply

6

with the Tennessee Jencks Act do not apply.

In this second type of case, there are two types of loss/destruction dealt with by the court. If the material is known to have been favorable to the accused on a material matter, the good or bad faith of the police is not relevant. As was stated in *Brady v Maryland* 83 S.Ct. 1194, 1197, 373 U.S.83,88, 10 L.Ed.2d 215 (1963):

> We now hold that the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good or bad faith of the prosecution.

In addition, the failure of the prosecution to preserve evidence which is potentially useful (as opposed to favorable) to the defendant may constitute a denial of due process of law, if the defendant can show bad faith on the part of the police. *Arizona v Youngblood* 488 U.S. 51, 109 S.Ct. 333, 337, 102 L.Ed.2d 281(1988). It should be noted that our examination does not involve failure of the prosecution to **disclose** the existence of evidence to the defense. See, e.g., *United States v Bagley* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Our examination relates to the loss or destruction of evidence which is known to have existed although its specific contents may or may not be known.

In a situation involving loss/destruction of known exculpatory evidence by the prosecution, the burden is (and should be) upon the defendant to establish that the undisclosed evidence would have been exculpatory. In the case of evidence which is potentially useful to the defendant, the burden is upon the defendant to establish both that the evidence was potentially useful and that the police acted in bad faith. This is a reasonable burden when the character of the disposed evidence is known.

The reasonableness of such a requirement disappears,

7

however, where the character of the undisclosed evidence cannot be determined because it has been lost or destroyed. Because of the fact of the loss/destruction by the police, it is difficult or impossible to determine what appeared on the tape. We have been unable to find any Tennessee cases involving such a situation which do not involve Jencks material. Other states and federal circuits hold that a defendant need only show that the disposed evidence was clearly material to the issue of guilt or innocence (not that it would have been exculpatory). See, e.g., State v. Booth 295 N.W.2d 194, 19 ALR 4th 498 (Wisc. App. 1980) and U.S. v Bryant 439 F.2d 642, 648 (D.C. Cir 1971). This seems to be a reasonable requirement.

If the accused establishes the materiality of the disposed evidence and also establishes the bad faith of the police in disposing of same, the rule is the same as with known evidence which has been destroyed. The police, by their conduct, have shown that the evidence would have been favorable to the accused and a violation of due process has occurred. See *Arizona v Youngblood* 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281(1988).

What remains, then, is the situation in which the bad faith of the police has not been established in the loss/destruction of evidence, the content of which is not known, but which would have been clearly material to the issue of guilt or innocence.

There are situations, of course, in which evidence is disposed of by the police without any bad faith whatever. An example is the case of *State v Inman*, supra. In *Inman*, it was discovered that the T.B.I. typing pool routinely erased audio tapes of interviews with witnesses after the same had been transcribed. The court found this practice to be ill-advised but not bad faith on the part of the T.B.I. The case was decided upon principles pertaining to Jencks Act statements; however, this court did examine this practice in light of due process.

8

The principle of *Arizona v Youngblood* was discussed along with the principle suggested in the concurrence by Mr. Justice Stevens and that suggested in Mr. Justice Blackmun's dissent but this court adopted no specific rule pertaining to this situation. It was held that since bad faith was not found and there was no indication that the tapes contained material, exculpatory information which was not otherwise brought out at trial, there was no due process violation under any of the principles contained in the *Youngblood* opinion. The case was actually decided on principles pertaining to Jencks material, as it should have been.

In the case before us, however, the evidence is not Jencks material. The due process issue is dispositive. A rule for evaluating violations of due process in these cases should be adopted. What is the role of the police with regard to preservation of evidence?

Although bad faith is not present, it is the police who are handling this evidence. One of the main functions of the police when a crime has been committed is to gather and preserve evidence. This function is discharged just as surely if the evidence is favorable to the accused as it is if it is incriminating. The police must preserve material evidence regardless of its character.

On the other hand, we do not intend to require the police to gather and preserve every piece of evidence pertaining to a crime whether material or not. Neither do we impose a duty to anticipate the usefulness of evidence to defense counsel and preserve that which might be of use to the defense. The police do not have "an undifferentiated and absolute duty to retain and preserve all material that might be of conceivable evidentiary significance in a particular prosecution". *Arizona v Youngblood* 488 U.S. 51, 109 S.Ct. 333, 337, 102 L.Ed.2d 281(1988).

Having defined the limits of the obligations of the police

9

in this respect, it appears that the standard set out in the dissent in *Youngblood* best accomplishes the goal of preservation of material evidence without imposing an unreasonable burden upon the police. The inquiry of the trial court in this situation should be focused upon:

> 1). the materiality of the evidence;

> 2). the potential of the evidence to exculpate, if that can be determined; and

> 3). the existence of other evidence on the same point of contention.

See *Arizona v Youngblood* 488 U.S. 51, 67-70, 109 S.Ct. 333, 342-3(1988).

We now examine the case at bar using these criteria.

The arresting officer testified that Appellant was given two field sobriety tests at the scene and that he could not remember taped field sobriety tests being given at the station; however, it was standard procedure to do so. According to the officer, Appellant failed both field sobriety tests administered at the scene. The appellant's physician was called to testify that Appellant's injuries would cause him to appear intoxicated and would hamper his performance of the field sobriety tests. Appellant testified that the officer only gave him a horizontal gaze Nystagmus test at the scene and gave him two taped field sobriety tests at the police station. The appellant further testified that the officer told him that Appellant had satisfactorily performed the tests administered at the station.

The video tape obviously contained the appellant performing field sobriety tests and going through the booking procedure. A video tape of the appellant performing field sobriety tests and talking to the officers would have been instructive to the jury of the issue of Appellant's intoxication, which is an essential element of the offense of D.U.I. The tape would have been material.

10

The potential of the contents of the tape to exculpate is doubtful.  Appellant testified that he successfully performed the field sobriety tests recorded on the tape and that the officer acknowledged that he had done so.  However, Appellant introduced medical testimony to establish that his injuries would have prevented him from successfully accomplishing field sobriety tests.  Appellant's physician testified that Appellant's balance was affected by his vascular headaches.  Appellant himself testified that his injuries, particularly those to his knee, would have hindered his ability to successfully perform a field sobriety test.  If the video tape showed Appellant performing poorly, the cause of the performance could be either intoxication or injury.  If the video tape showed Appellant performing satisfactorily, Appellant's testimony concerning his injuries would have become questionable. Appellant himself admitted that he appeared to be intoxicated but offered an explanation for so appearing.  We see little or no potential for exculpation in the missing evidence.

Finally, we note that there exists other evidence on this point of contention (the intoxication of the appellant).  The officer gave field sobriety tests at the scene and testified concerning Appellant's performance thereof.  He also testified concerning the odor of an alcoholic beverage on Appellant's breath and Appellant's physical appearance and speech being indicative of intoxication.  Appellant had an opportunity to avail himself of a breath alcohol test but refused same. The appellant introduced evidence of his sobriety and of a medical explanation of his appearance of intoxication.

In short, the evidence contained on the tape was material to an issue in the case. The evidence contained little or no potential to exculpate the appellant.  There was ample other evidence from which the sobriety, or lack thereof, of Appellant could be determined. Based on these factors, we find no

11

deprivation of Appellant's right to due process.

The issue is without merit.

The judgment of the trial court is affirmed.

_____

Robert E. Burch,

Special Judge

**CONCUR:**

(SEE CONCURRING OPINION)

Gary R. Wade, Judge

(SEE CONCURRING OPINION)

Joseph M. Tipton, Judge

13

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

FILED

July 17, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

AT KNOXVILLE

DECEMBER 1994 SESSION


STATE OF TENNESSEE,          *      C.C.A. # 03C01-9406-CR-00235


                Appellee,          *      WASHINGTON COUNTY


VS.                          *      Hon. Lynn W. Brown, Judge


MARVIN K. FERGUSON,          *      (DUI)


                Appellant.          *


**CONCURRING OPINION**


        I concur in the result.  I write separately only to note that this court has followed the majority opinion in <u>Arizona v. Youngblood</u>, 488 U.S. 51 (1988); thus, I do not believe we should now adopt a conflicting view.  In <u>Hershel Clark v. State</u>, No. 02C01-9112-CR-00273, slip op. at 12 (Tenn. Crim. App., at Jackson, June 2, 1993), our court followed the <u>Youngblood</u> majority.  In <u>Clark</u>, the defendant alleged that the state failed to preserve certain of a rape victim's clothing.  <u>Id.</u> at 12.  There was also proof that the state probably never had possession of any of the items.  <u>Id.</u>

Our court concluded as follows:

> From a due process perspective, when it is not shown that the evidence in issue is, in fact, materially exculpatory, but, instead, is shown that it <u>might</u> be materially exculpatory, it is usually necessary to show that the evidence no longer exists and that the state had an improper hand in the lack of its preservation. <u>See Arizona v. Youngblood</u>, 488 U.S. 51, 109 S.Ct. 333 (1988). No such showing was made in this case.

<u>Id.</u> <u>See also</u> <u>State v. Jerry Dwayne Cammuse</u>, No. 01C01-9107-CR-00216, slip op. at 13 (Tenn. Crim. App., at Nashville, Apr. 29, 1992) (quoting <u>Youngblood</u>'s majority opinion with approval). Permission to appeal was denied in the <u>Cammuse</u> case on September 14, 1992.

In my view, there was no due process violation here because the defendant has failed to show any bad faith on the part of the state.  While I concur in the result, I believe the majority opinion in <u>Youngblood</u> to be the better course.

_____

Gary R. Wade, Judge

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

DECEMBER 1994 SESSION

FILED

July 17, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,    )
                       )
    Appellee,          )    No. 03C01-9406-CR-00235
                       )
                       )    Washington County
v.                     )
                       )    Honorable Lynn W. Brown, Judge
                       )
MARVIN K. FERGUSON,    )         (DUI)
                       )
    Appellant.         )


CONCURRING OPINION


    I concur in the result, as well.  As for the issue of destruction or loss of potentially exculpatory evidence, I think we should not use this case to resolve any potential issue about the extent to which <u>Arizona v. Youngblood</u>, 488 U.S. 51, 109 S. Ct. 333 (1988), defines the due process considerations to be applied under the Tennessee Constitution.  This is because, as Judge Burch concludes, the defendant does not prevail under any of the <u>Youngblood</u> standards.

    I do recognize that this court has recently followed the majority opinion in <u>Youngblood</u> in several unpublished opinions that have focused on the lack of bad faith by the state.  <u>See</u> <u>State v. Fabien Eldridge</u>, No. 01C01-9504-CC-00106, Putnam County (Tenn. Crim. App. May 7, 1997); <u>Robert Lloyd Wiggins v. State</u>, No. 03C01-9606-CC-00191, McMinn County (Tenn. Crim. App. Mar. 20, 1997); <u>State v. Jerry Douglas Franklin</u>, No. 01C01-9510-CR-00348, Davidson County (Tenn. Crim. App. Feb. 28, 1997).  However, I am

17

not ready to concede that due process under the Tennessee Constitution requires bad faith on the part of the state in all instances. In fact, our supreme court has shown that the fundamental fairness requirement in a criminal prosecution is not limited to circumstances involving state action. See State v. Gray, 917 S.W.2d 668, 673 (Tenn. 1996) (pre-accusatorial delay may bar prosecution without any state related cause). Also, I note that the majority of states to consider Youngblood in relation to their state constitutions have rejected the majority opinion. See, e.g., State v. Morales, 657 A.2d 585, 594-95 (Conn. 1995) (listing states and noting that only Arizona and California had, at that time, agreed with Youngblood).

Our supreme court has recognized that due process is flexible and calls for such procedural protections as the particular situation demands. Gray, 917 S.W.2d at 673. This case certainly does not call for any protection beyond Youngblood. Thus, I would hesitate to use this case to test the limits of Youngblood against the limits of our state constitution.

_____
Joseph M. Tipton, Judge