Filed 1/9/14  P. v. Schultz CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C062100 |
| Plaintiff and Respondent, | (Super. Ct. No. SF108413A) |
| v. | |
| RICHARD ORVILLE SCHULTZ, | |
| Defendant and Appellant. | |

In incidents almost five years apart, defendant shot and killed Antonio Perez in 2003 and Terry Chatman in 2008.  Convicted by jury of manslaughter and murder, defendant appeals.  He contends:  (1) his trial attorney violated his right to counsel by not moving to dismiss the prosecution for the 2003 Perez homicide for prejudicial delay in filing the charges; (2) the trial court violated his confrontation rights in allowing a pathologist who did not perform the autopsy and toxicology tests to testify concerning the results of those procedures; (3) the trial court violated his due process rights by denying a motion to sever the trial of the 2003 Perez homicide from the trial of the 2008 Chatman homicide; and (4) cumulative error requires reversal.

Finding no error and no violation of defendant's rights, we affirm.

FACTS

Our consideration of defendant's contentions on appeal does not require a detailed recounting of the evidence presented at trial. Instead, we provide a summary of the facts in the light most favorable to the verdicts.

Defendant is a retired engineer who bought, renovated, and rented houses in Stockton.

In 2003, Antonio Perez worked for defendant, renovating a house on South San Joaquin Street. However, Perez found it difficult to get defendant to pay him for the work Perez had done.

On November 3, 2003, Perez went to the South San Joaquin Street house to talk to defendant about getting paid. Defendant shot and killed Perez.

In 2008, defendant was renovating a house on East Worth Street. He had a dispute with Terry Chatman, who owned the house next door, over who would pay for a fence between their properties.

On May 19, 2008, the dispute turned physical. Defendant pushed Chatman, and Chatman grabbed defendant in a choke hold. Defendant lost consciousness for a minute.

On May 27, 2008, defendant approached Chatman from behind as Chatman was working on the fence. Defendant pointed the gun at Chatman's head and fired. Chatman fell to the ground. After a pause, defendant shot Chatman three more times.

Defendant claimed that each of the shootings was in self-defense.

PROCEDURE

The district attorney filed an information charging defendant with two counts of murder. (Pen. Code, § 187; unreferenced code citations later in this opinion are also to the Penal Code.) Count 1 alleged the 2008 Chatman homicide and count 2 alleged the 2003 Perez homicide. The information also alleged firearm enhancements (former §§

2

12022.5, subd. (a); 12022.53, subd. (d)) and a multiple-murder special circumstance (§ 190.2, subd. (a)(3)).

A jury found defendant guilty of first degree murder of Chatman on count 1 and found true the firearm enhancements. As to count 2, the jury found defendant guilty of the lesser-included offense of voluntary manslaughter and found true one of the firearm enhancements.

The trial court sentenced defendant on count 1 to a term of 25 years to life, plus a consecutive 25 years to life for discharge of a firearm resulting in death. The court sentenced defendant on count 2 to a consecutive determinate term of six years in state prison, with a consecutive four years for firearm use. The aggregate sentence was a determinate term of 10 years, followed by an indeterminate term of 50 years to life in state prison.

## DISCUSSION

### I

#### *Effective Assistance of Counsel*

Defendant contends that his trial attorney violated his right to counsel by not filing a motion to dismiss based on the delay in prosecuting him for Perez's 2003 death. We conclude that his right to counsel was not violated because a motion to dismiss based on delay in prosecution would have been futile.

A. *Background*

Defendant claimed that he did not know Perez and that he shot Perez in self-defense after Perez ambushed him and started hitting him with a board. The Stockton Police Department investigated, but eventually closed the investigation in December 2003 and destroyed or released the evidence it had gathered. Defendant's gun he had used to kill Perez was returned to defendant.

Five years later, during the investigation of the 2008 Chatman homicide, the Stockton Police Department reopened the investigation of the 2003 Perez homicide. In

3

that renewed investigation, detectives located witnesses they did not know about before. Abel Perez, the victim's brother, put them in touch with the victim's girlfriend, Teresa Vasquez. She later testified that Perez had worked for defendant remodeling the home on South San Joaquin Street and that Perez had difficulty getting defendant to pay him for his work. The detectives also contacted William Maestas, who later testified that, on the night of Perez's death, Perez went to the South San Joaquin Street house to get paid.

B.      *Relevant Law*

1.      Effective Assistance of Counsel

Under both the Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution, a criminal defendant has a right to the assistance of counsel. (See *Strickland v. Washington* (1984) 466 U.S. 668, 684-685 [80 L.Ed.2d 674, 691-692]; *People v. Pope* (1979) 23 Cal.3d 412, 422.) This right "entitles the defendant not to some bare assistance but rather to *effective* assistance." (*People v. Ledesma* (1987) 43 Cal.3d 171, 215, original italics.) "To establish entitlement to relief for ineffective assistance of counsel the burden is on the defendant to show (1) trial counsel failed to act in the manner to be expected of reasonably competent attorneys acting as diligent advocates and (2) it is reasonably probable that a more favorable determination would have resulted in the absence of counsel's failings. [Citations.]" (*People v. Lewis* (1990) 50 Cal.3d 262, 288.)

2.      Delay in Prosecution

" '[T]he statute of limitations is usually considered the primary guarantee against bringing overly stale criminal charges,' and there 'is no statute of limitations on murder.' [Citation.]" (*People v. Nelson* (2008) 43 Cal.4th 1242, 1250 (*Nelson*).) Beyond this rule of thumb, "[d]elay in prosecution that occurs before the accused is arrested or the complaint is filed may constitute a denial of the right to a fair trial and to due process of law under the state and federal Constitutions. A defendant seeking to dismiss a charge on this ground must demonstrate prejudice arising from the delay. The prosecution may

4

offer justification for the delay, and the court considering a motion to dismiss balances the harm to the defendant against the justification for the delay. [Citations.]" (*People v. Catlin* (2001) 26 Cal.4th 81, 107; *Nelson, supra,* 43 Cal.4th at p. 1250.)

While "[a] claim based upon the federal Constitution also requires a showing that the delay was undertaken to gain a tactical advantage over the defendant" (*People v. Catlin, supra*, 26 Cal.4th at p. 107), "under California law, negligent, as well as purposeful, delay in bringing charges may, when accompanied by a showing of prejudice, violate due process." (*Nelson, supra*, 43 Cal.4th at p. 1255.) As our Supreme Court has explained: " 'The ultimate inquiry in determining a claim based upon due process is whether the defendant will be denied a fair trial. If such deprivation results from unjustified delay by the prosecution coupled with prejudice, it makes no difference whether the delay was deliberately designed to disadvantage the defendant, or whether it was caused by negligence of law enforcement agencies or the prosecution. In both situations, the defendant will be denied his right to a fair trial as a result of governmental conduct. [Citation.]' [Citation.]" (*Ibid*.) However, "whether the delay was negligent or purposeful is relevant to the balancing process. Purposeful delay to gain an advantage is totally unjustified, and a relatively weak showing of prejudice would suffice to tip the scales towards finding a due process violation. If the delay was merely negligent, a greater showing of prejudice would be required to establish a due process violation." (*Id.* at p. 1256.)

Whether delay in bringing charges is unjustified and prejudicial is a question of fact, the trial court's resolution of which " 'must be upheld on appeal if it is supported by substantial evidence. [Citation.]' [Citation.]" (*People v. New* (2008) 163 Cal.App.4th 442, 460 (*New*).)

C.     *Analysis*

Defendant forfeited the argument that the delay in prosecution violated his due process rights because he did not move in the trial court to dismiss count 2 based on

delay in the prosecution. (*People v. Lewis* (2008) 43 Cal.4th 415, 445.) Nonetheless, we must consider the possible merit of such an objection because defendant claims his trial attorney violated his right to counsel by failing to move to dismiss.

Defendant's claim of ineffective assistance of counsel fails on both prongs of the analysis – deficient performance and prejudice – because a motion to dismiss count 2 would have been futile, as there was no due process violation. (See *People v. Lewis, supra,* 50 Cal.3d at p. 288.)

The justification for the delay in charging defendant with the murder of Perez outweighed any prejudice suffered by defendant. As noted, there is no statute of limitations for murder, which clearly demonstrates the public's interest in prosecuting murders whenever sufficient evidence is gathered of the defendant's guilt. Here, defendant deliberately threw law enforcement off his trail by lying about his confrontation with Perez – defendant told law enforcement that Perez was a stranger, when the truth was that Perez was an employee to whom defendant owed money. Also, defendant claimed he shot Perez in self-defense. Therefore, defendant's own statements caused law enforcement to believe that defendant should not be prosecuted. This reasonable, good faith reason for delay in prosecution outweighed the prejudice defendant claims he suffered from the delay.

According to defendant, the prejudice he suffered from the delay in prosecuting the Perez homicide was that the jacket he was wearing when he shot Perez may have been helpful in his defense, but the jacket had been discarded and he did not document injuries he claims to have sustained in the incident. Defendant testified that the jacket he wore that evening was discarded because it was torn up and had bullet holes in it. Defendant also testified that he sustained bruises during the incident which did not become visible until about three days after the incident. On appeal, he claims that the jacket and bruises would have supported his testimony. Citing his trial attorney's argument supporting the motion to sever, defendant also claims that there were other

6

items collected by police but destroyed because it was believed there would be no prosecution. He states those items possibly included gunshot residue, blood spatter, and other evidence. This claim that there could have been additional evidence, however, is nothing but speculation based on an assertion by defense counsel in support of the motion to sever.

Defendant argues: "The record is devoid of any justification for the delay. Police closed their file on the 2003 shooting on December 8, 2003, destroying or releasing the evidence. Nothing in the record even remotely suggests that the witnesses whom police did not bother to contact until 2008 – Teresa Vasquez and William Maestas, were unavailable in the exercise of reasonable diligence five years earlier. Had police bothered to contact Vasquez or Maestas, they would have learned that Antonio Perez was a former employee of [defendant] and that [defendant] owed him money. Instead, police waited five years to interview either witness."

Contrary to defendant's argument, the record is not devoid of a justification for delay. That justification was defendant's deceptive but plausible claim of self-defense, which, of course, became less plausible when defendant killed another man, again claiming self-defense. In addition to the claim of self-defense, defendant's lies to investigators in 2003 that he did not know Perez justified the delay in prosecution by making the self-defense assertion believable. In light of what the police knew soon after the homicide, there was no reason to go looking for people who may have contradicted defendant's claims.

Balancing of the reasonable, good faith delay against the speculative claims of prejudice leads us to conclude that, even if defendant had moved to dismiss count 2, the motion would have been denied. Therefore, the claim of ineffective assistance of counsel is without merit.

Defendant also contends that we should apply cases from Tennessee and conclude that the delay in prosecution violated his due process rights. In those cases, the courts

held that a defendant could base his delay-in-prosecution argument on the victim's delay in reporting the crime. (See *State v. Gray* (Tenn. 1996) 917 S.W.2d 668; *State v. Carico* (Tenn. 1998) 968 S.W.2d 280, 284; *State v. Utley* (Tenn. 1997) 956 S.W.2d 489, 496.) Obviously, Perez did not cause a delay in prosecuting his own homicide, but defendant asserts that we should consider that witnesses did not come forward to rebut defendant's claims that he did not know Perez. We need not consider these Tennessee cases because the facts of this case do not support application of the holding in those cases. There is no evidence here that there were potential witnesses who knew about defendant's lies and failed to come forward.

## II

### *Testimony of Pathologist*

Defendant contends that his confrontation rights were violated because the pathologist who conducted the autopsy on the victim did not testify at trial and, instead, another pathologist testified, using the facts stated in the autopsy report and in reports on toxicology tests. We conclude that the procedure did not violate defendant's confrontation rights.

A.  *Procedure*

Pathologist Bennet Omalu testified for the prosecution concerning Perez's death. He did not perform the autopsy or toxicology tests but he reviewed the autopsy report, autopsy pictures, toxicology report, and police reports before testifying. He also reviewed the preliminary hearing testimony of the pathologist, Dr. Lawrence, who performed the autopsy. Defendant objected to Dr. Omalu's testimony based on hearsay, and the trial court overruled the objection. The autopsy report was not admitted as evidence.

Dr. Omalu based his testimony on the reports and photographs he reviewed. In doing this, he noted Dr. Lawrence's observations and findings. For example, Dr. Omalu testified: "There was another bullet documented by Dr. Lawrence which grazed. And

8

'grazing' simply means a bullet that tangentially . . . [a]braded the left forearm, and abraded the chest without penetrating the body." At one point, Dr. Omalu used the word "opinion" in referring to the autopsy report, as follows: "Upon exiting [of the bullet], from Dr. Lawrence's opinion and disposition, the bullet entered the left side of the chest. So it was one bullet, one gunshot, but first entered the left forearm and entered the chest." Despite this brief allusion to an opinion, Dr. Omalu testified that, "based on [the] photographs, separate from anything Dr. Lawrence said," the victim "died as a result of a gunshot wound to the chest."

Other opinions expressed by Dr. Omalu in his testimony were along the same lines. For example, he testified that, based on the toxicology results, the victim was significantly impaired at the time of his death.

The prosecutor showed Dr. Omalu a photograph which depicted, in Dr. Omalu's words, "Dr. Lawrence, who was most probably demonstrating a possibility – a possible location of [the victim's] upper extremity when he was shot." Dr. Omalu agreed from the evidence that the upper extremity may have been positioned as shown by Dr. Lawrence.

B.      *Relevant Law*

"Under the Sixth Amendment to the United States Constitution, a defendant in a criminal trial has the right to confront and cross-examine adverse witnesses (the Confrontation Clause). This provision bars the admission at trial of a testimonial statement made outside of court against a defendant unless the maker of the statement is unavailable at trial and the defendant had a prior opportunity to cross-examine that person. [Citation.]" (*People v. Barba* (2013) 215 Cal.App.4th 712, 720-721.) The California Supreme Court has considered confrontation clause arguments in several recent cases, including *People v. Dungo* (2012) 55 Cal.4th 608 (*Dungo*).

In *Dungo*, the defendant was charged with murder. The trial court admitted opinion testimony of a pathologist who had not done the autopsy but based his opinion on the autopsy report and the accompanying photographs. The expert testified that the

victim died as a result of strangulation.  He noted elements of the autopsy report that supported his conclusion.  (*Dungo, supra,* 55 Cal.4th at p. 614.)  The autopsy report itself was not admitted into evidence.  (*Id*. at p. 615.)

The Supreme Court held that the admission of this evidence did not violate the confrontation clause because the factual information in the autopsy report regarding the condition of the body was not testimonial.  (*Dungo, supra,* 55 Cal.4th at pp. 619-621.)  According to the court, "the prosecution's use of testimonial out-of-court statements 'ordinarily violates the defendant's right to confront the maker of the statements unless the declarant is unavailable to testify and the defendant had a prior opportunity for cross-examination.' . . .  [T]estimonial out-of-court statements have two critical components.  First, to be testimonial the statement must be made with some degree of formality or solemnity.  Second, the statement is testimonial only if its primary purpose pertains in some fashion to a criminal prosecution."  (*Id*. at p. 619.)

The *Dungo* court concluded that an autopsy report's observations about the condition of the body — as opposed to any conclusions based on those observations — are not so formal as to be testimonial.  (*Dungo, supra,* 55 Cal.4th at pp. 619-620.)  Rather, "[t]hey are comparable to observations of objective fact in a report by a physician who, after examining a patient, diagnoses a particular injury or ailment and determines the appropriate treatment.  Such observations are not testimonial in nature. . . . [Citation.]"  (*Ibid*..)  The court also concluded that "criminal investigation was not the primary purpose for the autopsy report's description of the condition of [the victim's] body; it was only one of several purposes."  (*Dungo, supra*, 55 Cal.4th at p. 621, italics omitted.)  It explained that a coroner is statutorily required to determine the cause of certain types of death, including types that are not related to criminal activity.  (*Id*. at p. 620.)  It also noted:  "The usefulness of autopsy reports, including the one at issue here, is not limited to criminal investigation and prosecution; such reports serve many other equally important purposes."  (*Id*. at p. 621.)

10

Because *Dungo* is dispositive, we need not discuss *People v. Lopez* (2012) 55 Cal.4th 569 (*Lopez*) and *People v. Rutterschmidt* (2012) 55 Cal.4th 650, which are companion cases to *Dungo*.

C.      *Analysis*

Defendant forfeited the confrontation clause issue by failing to object on that ground in the trial court.  Claims of evidentiary error, even of constitutional dimension, will not be reviewed on appeal absent a specific and timely objection in the trial court. (*People v. Alvarez* (1996) 14 Cal.4th 155, 186.)

In any event, the procedure did not violate defendant's rights.  Dr. Omalu's reliance on the autopsy report prepared by Dr. Lawrence did not violate the confrontation clause because the autopsy report was not testimonial.  Dr. Omalu relied on the autopsy report (as well as autopsy photographs and other reports) to inform his own expert opinion concerning the victim's death.  As noted in *Dungo*, that procedure does not violate the confrontation clause.

Defendant argues:  "The expert testimony in [this] case went far beyond objective facts describing the condition of the victim's body, which was held not to violate the Confrontation Clause in *Dungo*."  We disagree.  Dr. Omalu did not simply parrot Dr. Lawrence's opinions; instead, Dr. Omalu looked at the objective facts as disclosed in the various reports he reviewed before testifying and gave his opinions concerning the victim's condition when he died and the cause of death.

Defendant also suggests that *Dungo* and *Lopez* were wrongly decided.  He prefers the dissents in those cases.  We, of course, are bound by the majority holdings.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)  Therefore, defendant's confrontation clause argument is without merit.

11

III

*Motion to Sever*

Defendant contends that the trial court abused its discretion and violated his federal and state rights to due process when it denied his motion to sever count 2, the 2003 Perez homicide, from count 1, the 2008 Chatman homicide.  We find no abuse of discretion and no due process violation.

A.     *Relevant Law*

Section 954 permits the joinder of "two or more different offenses of the same class of crimes or offenses."  The law favors joinder of counts because it promotes efficiency.  (*People v. Myles* (2012) 53 Cal.4th 1181, 1200 (*Myles*).)  Even when joinder is proper, the trial court may, "in the interests of justice and for good cause shown," exercise its discretion to order that different offenses or counts be tried separately.  (§ 954; see *People v. Thomas* (2012) 53 Cal.4th 771, 798 (*Thomas*).)  " ' "The burden is on the party seeking severance to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried." [Citation.]' " (*People v. Bradford* (1997) 15 Cal.4th 1229, 1315.)

If the trial court denies a motion to sever, the ruling is reviewed on appeal for abuse of discretion.  (*People v. Ramirez* (2006) 39 Cal.4th 398, 439.)  In determining whether a trial court abused its discretion, we consider the record before the trial court when it made it ruling.  (*Thomas, supra,* 53 Cal.4th at p. 798.)  "We consider first whether the evidence of the two sets of offenses would have been cross-admissible if the offenses had been separately tried.  [Citation.]  *If the evidence would have been cross-admissible, then joinder of the charges was not prejudicial.*"  (*Ibid.*, italics added.)

If the evidence is not cross-admissible, "we next inquire 'whether the benefits of joinder were sufficiently substantial to outweigh the possible "spill-over" effect of the "other-crimes" evidence on the jury in its consideration of the evidence of [the]

12

defendant's guilt of each set of offenses.' [Citations.] We consider '[1] whether some of the charges are likely to unusually inflame the jury against the defendant; [2] whether a weak case has been joined with a strong case or another weak case so that the total evidence may alter the outcome of some or all of the charges; and [3] whether one of the charges is a capital offense, or the joinder of the charges converts the matter into a capital case.' [Citation.] 'We then balance the potential for prejudice to the defendant from a joint trial against the countervailing benefits to the state.' [Citation.]" (*Thomas, supra,* 53 Cal.4th at pp. 798-799.)

Finally, even when a trial court's denial of severance was not an abuse of discretion at the time it was made, we must consider the evidence actually introduced at trial to determine whether the joinder resulted in a gross unfairness amounting to a denial of fair trial or due process. (*Thomas, supra*, 53 Cal.4th at pp. 800-801; *Myles, supra,* 53 Cal.4th at p. 1202.)

B. *Ruling*

The trial court carefully explained its reasons for exercising its discretion to deny the motion to sever. We need not recount the entire ruling; however, of particular importance to our review is the trial court's comments concerning cross-admissibility. It said: "Cross-admissibility, actually, is conceded by the defense here. Consequently, I'm not going to go into an extensive [Evidence Code section] 1101(b) analysis. Suffice it to say that intent is an active issue here, because of a self-defense claim. [¶] The lowest degree of similarity is required to support admissibility of other evidence under 1101(b)."

C. *Analysis*

Joinder under section 954 was proper because the two homicides were both charged as murders. (*Thomas, supra,* 53 Cal.4th at p. 798.) Furthermore, it was not an abuse of discretion because the two murders were cross-admissible. Because they were cross-admissible, it is unnecessary to consider other factors relating to denial of a motion to sever, such as the charges inflaming the jury, the weak case/strong case dichotomy, or

13

whether there was a capital offense.  Those factors do not come into play if the evidence was cross-admissible.  (*Thomas, supra,* 53 Cal.4th at p. 798.)

As the defense conceded at trial, the homicides were cross-admissible on the issue of intent.  (See Evid. Code, § 1101, subd. (b) [evidence of other acts admissible to prove intent].)

Contrary to the concession in the trial court that the two homicides were cross-admissible, defendant argues on appeal that the two homicides were not cross-admissible, but his entire argument in this regard is that the facts of this case do not match the facts of *New, supra,* 163 Cal.App.4th 442.  That case, however, is not the law of cross-admissibility; instead, it is merely an application of that law.  Regardless of the application of the law of cross-admissibility to the specific facts of *New¸* however, the 2003 Perez homicide was admissible to support the prosecution's argument concerning defendant's intent in the 2008 Chatman homicide and vice versa.

Evidence Code section 1101, subdivision (a) prohibits the use of evidence of a person's character, including evidence of character as manifested in prior uncharged conduct, to prove conduct on a specific occasion.  The Evidence Code, however, recognizes that evidence of other criminal acts can be relevant for reasons other than to prove bad character.  Under subdivision (b) of section 1101, evidence of criminal acts otherwise excludable under subdivision (a) may be admitted if the acts are "relevant to prove some fact . . . other than [the defendant's] disposition to commit [a criminal] act."  Evidence is most commonly admitted under subdivision (b) to prove (1) motive or intent, (2) a common design or plan between the uncharged and charged crimes, and (3) identity.  (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402-403 & fn. 6 (*Ewoldt*).)

In order to justify admission under Evidence Code section 1101, the uncharged conduct must bear some resemblance to the charged crime, although the requisite degree of similarity will vary depending upon the purpose for which the evidence is admitted.  (*Ewoldt, supra*, 7 Cal.4th at p. 402.)  "The least degree of similarity (between the

14

uncharged act and the charged offense) is required in order to prove intent. [Citation.] '[T]he recurrence of a similar result . . . tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act . . . .' [Citation.] In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same intent in each instance." [Citations.]' [Citation.]" (*Ibid*.)

Here, evidence of each homicide was admissible as to the other because it tended to negate defendant's claims of self-defense. Under similar circumstances, defendant shot and killed two men, claiming each time that he did so in self-defense. Thus, the homicides were cross-admissible under *Ewoldt* to negate the claims of self-defense.

Since the homicides were cross-admissible, the trial court did not abuse its discretion in denying the motion to sever count 2 from count 1. Concerning defendant's due process argument, we need not consider that matter further because defendant does not contend that evidence actually introduced at trial as a result of joinder resulted in a gross unfairness amounting to a denial of fair trial or due process. (*Thomas, supra*, 53 Cal.4th at pp. 800-801; *Myles, supra,* 53 Cal.4th at p. 1202.) Furthermore, our review of the case reveals no such gross unfairness resulting from the joinder of the two homicides because, even if they had been severed, the evidence of the homicides was still cross-admissible.

In summary, joinder was proper under section 954. Denial of the motion to sever was not an abuse of discretion because the two homicides were cross-admissible. And joinder did not violate defendant's due process rights because it did not result in gross unfairness.

IV

*Cumulative Error*

Having found no error, we also conclude that there was no prejudice resulting from cumulative error.

DISPOSITION

The judgment is affirmed.

       NICHOLSON     , J.

We concur:

       RAYE          , P. J.

       BUTZ          , J.