IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 19, 2015


**STATE OF TENNSSEE v. STEVEN J. BALLOU**

**Appeal from the Criminal Court for Bradley County**
**No. M10544      Sandra Donaghy, Judge**

_____

**No. E2015-00399-CCA-R3-CD – filed November 30, 2015**

The defendant, Steven J. Ballou, pled guilty to one count of evading arrest, a Class D felony, and received a sentence of five years to be served consecutively to a prior sentence. As part of his guilty plea, the defendant reserved two certified questions of law. In the first question, he argues that an eighteen-month pre-indictment delay caused substantial prejudice to his right to a fair trial and was an intentional delay by the State to gain a tactical advantage over the defendant. In the second, he contends that the loss of police cruiser dashboard camera videos that contained potentially exculpatory evidence violated his right to a fair trial. Following our review, we affirm the judgment of the trial court as to the first certified question of law and conclude that we do not have jurisdiction to consider the second certified question.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J. delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR. and TIMOTHY L. EASTER, JJ., joined.

Richard Hughes, Jr., District Public Defender; and John Fortuno, Assistant District Public Defender, for the Appellant, Steven J. Ballou.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Stephen Crump, District Attorney General; and Brooklyn Townsend, Assistant District Attorney General, for the Appellee, State of Tennessee.


**OPINION**

**FACTS AND PROCEDURAL HISTORY**

On February 23, 2009, Detective Chad Ownby of the Bradley County Sheriff's Department was working for the criminal interdiction unit on Interstate 75 ("I-75"). Detective Ownby observed the defendant's vehicle driving seventy-five miles per hour in an area where the posted speed limit was seventy miles per hour. Detective Ownby began driving behind the vehicle, and the vehicle "slammed on its brakes and almost buckled." Detective Ownby observed "through the back window hands moving in the air, like passing -- possibly passing something back, or hiding something." Detective Ownby also saw the vehicle cross "the fog line three times from the right side of the roadway."

Detective Ownby activated his blue lights to initiate a traffic stop of the vehicle. The defendant immediately accelerated, and Detective Ownby activated his siren. He informed other officers that he was in pursuit of a vehicle who failed to stop. Detective Johnny Stokes joined Detective Ownby in pursuit of the vehicle, and he also activated his blue lights and siren.

The defendant proceeded to lead officers on a high-speed chase down I-75, which was recorded by the dashboard cameras in Detective Ownby's and Detective Stokes's police cruisers. The defendant used the median and the shoulder of the interstate to pass other motorists and to avoid spike strips that police officers had laid down. The defendant exited the interstate and drove through a red light across the road that connected to the exit ramp, nearly striking a vehicle in the process. The defendant continued onto the on-ramp for the interstate and cut across a grassy area between the on-ramp and the interstate to avoid police spike strips.

Once the defendant returned to the interstate, Detective Stokes pulled his cruiser in front of the defendant and applied his brakes in an attempt to slow down the defendant. Detective Ownby approached the vehicle from the rear and attempted to pull along the right side of the vehicle. The defendant struck Detective Stokes's vehicle and then struck Detective Ownby's vehicle as he attempted to maneuver between the two officers.

The chase continued, and the defendant drove across the median and began driving northbound on the interstate in the opposite direction. The defendant later exited the interstate onto a two-lane highway, passing several vehicles on the highway. Hamilton County police officers were called to assist in the apprehension of the defendant. The presence of the officers forced the defendant to turn into a parking lot of a shopping plaza. The defendant was attempting to open his door when Detective Ownby pulled his patrol car alongside of the vehicle and used his front bumper to prevent the defendant from exiting the vehicle.

2

In addition to the defendant, officers observed three women in the car, along with two small children who were unrestrained by safety belts. All of the occupants of the vehicle were detained, and Detective Stokes recovered two loaded firearms from the vehicle.

After a preliminary hearing on March 3, 2009, the case was bound over to a Bradley County Grand Jury. In April of 2009, the case was "no billed," and the defendant was released from jail. On August 25, 2010, the grand jury indicted the defendant for two counts of vandalism of over $1000 but less than $10,000, two counts of aggravated assault, five counts of reckless endangerment, and one count of felony evading arrest. During November of 2012, the video recording from Detective Stokes's vehicle was lost when several drives on the video storage unit server were corrupted. On December 17, 2013, the State filed a motion to retire the case, which was granted. On June 3, 2014, the State's motion to reopen the case was granted.

The defendant subsequently filed a motion to dismiss due to a pre-indictment delay. The defendant argued that the destruction of potentially exculpatory evidence prejudiced him and allowed the State to gain an intentional tactical advantage at trial. He contended that a conviction for aggravated robbery that occurred after he was released from jail in 2009 exposed him to a higher sentencing range and the risk of consecutive sentencing. The defendant also filed a motion to dismiss pursuant to *State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999), arguing that the State had a duty to preserve the dashboard camera video from Detective Stokes's vehicle and that its destruction violated his right to a fair trial.

At a hearing on the motions, Detective Ownby testified that he believed that the case was not presented to the Bradley County Grand Jury after the preliminary hearing because the defendant was going to be federally prosecuted. Detective Ownby explained that videos recorded by patrol car dashboard cameras could be "dumped or downloaded at any time." He testified that when a police officer worked a case and a video was recorded, that officer would "immediately make a disk" of the recording for his case files. A copy of the video was not made for everyone involved in the case but was intended for the officer who was responsible for recording the video. Detective Ownby testified that he made a disk of the recording of the defendant's police chase, and this disk was entered into evidence. He stated that the video depicted every offense with which the defendant was charged. He testified that the video recording from the dashboard camera of his patrol car was the best recording of the incident because he was the officer who initiated the stop and was behind the defendant for the duration of the chase.

3

Detective Ownby testified that he was not aware of "concurrent prosecution," where a defendant was simultaneously prosecuted by State and federal authorities. He testified that he recalled being asked at the preliminary hearing to preserve the video from Detective Stokes's patrol car, and he stated that he did not preserve that video. He also did not seek out the videos from the other officers involved in the case. He testified that video from Detective Stokes's car would not have shown Detective Stokes applying the brakes because the car was not equipped with a rearview camera.

Detective Stokes testified that he participated in the pursuit of the defendant on I-75 and that Agent Mike Patterson also assisted in the pursuit. He stated that Detective Ownby was the officer responsible for the defendant's case. He recalled reviewing the recordings from both his and Detective Ownby's vehicles. He did not make any copies of his video because the case belonged to Detective Ownby, and Detective Stokes's video was only "to be stored for future evidence." Detective Stokes stated that he did not know why his video was destroyed. He testified that Detective Ownby's video would be a better depiction of the chase when Detective Stokes was the lead car.

Detective Brandon Edwards testified that he was notified by dispatch that Detective Ownby was pursuing a suspect on the interstate. He assisted in the pursuit but was never directly behind the defendant during the chase. He testified that his cruiser had a dashboard camera but that he did not make a copy of the video because he was not the arresting officer and it was not his case. He testified that he was not in direct contact with Detectives Ownby and Stokes during the chase but was receiving reports from dispatch.

Jeff Liner testified that he was the I.T. Director for the Bradley County Sheriff's office. He stated that sometime during November of 2012, "some components in our video storage server went bad" and that "[t]wo drives were lost." He explained that there were twelve drives that comprised an "array." Due to the design of the system, if two drives on the same array failed, everything on that particular array was lost. Mr. Liner testified that everything that was not saved in a different part of the computer was lost when the drives failed. He explained that the drives were repaired on December 10, 2012, and that anything downloaded onto the server before that date was lost. Detective Stokes's recording of the chase was one of the videos that was lost when the system failed.

Mr. Liner testified that he was not aware of a policy in the Sheriff's Department to destroy videos after a certain period of time. He testified that the videos would have been available for retrieval up until the date of the computer malfunction. He explained that the crash was not the fault of anyone in the Sheriff's Office but was due to "a faulty part in the server itself." Mr. Liner stated that there was no negligence or intentional

tampering with the system that caused the crash. He testified that he contacted the manufacturer of the server and attempted to recover the lost data, but none could be recovered. He explained that pieces of each downloaded item were stored across the twelve drives. The data from the defective drives could not be reassembled when the new drives were installed because there was no data on the new drives that matched with the data from the remaining drives. Mr. Liner testified that there was not a backup system in place for the video storage system due to a lack of funding from the county.

Detective Carl Maskew testified that he was an officer in the Bradley County Sheriff's Office who was assigned to a joint task force between the State and the Alcohol, Tobacco, and Firearms Agency ("ATF") at the time of the pursuit. He was contacted when firearms were discovered in the defendant's vehicle. Detective Maskew researched the defendant's criminal history and discovered that he had "two or three violent felony convictions." Detective Maskew testified that one of the women in the vehicle initially planned to testify that the defendant had passed her a firearm and asked her to conceal it in her purse. Detective Maskew believed the intent was to have the witness testify before a federal grand jury. However, the case was not prosecuted because the witness later became uncooperative. He stated that the case "kind of s[a]t in limbo on the desk of the U.S. Attorney." When Detective Maskew returned to the Bradley County Sheriff's Office, he was not kept apprised of the status of the case. He stated that it was common for the U.S. Attorney's Office to wait for a long period of time before making the decision to prosecute a case.

Detective Maskew testified that he was aware of concurrent federal and state jurisdiction. He stated that nothing was preventing him from presenting the case to a state grand jury after the preliminary hearing. He stated that the initial decision was to let the federal prosecution commence first due to the defendant's extensive criminal history.

The trial court issued a written order denying the defendant's motions to dismiss due to a pre-indictment delay and lost evidence. The court accredited the testimony of all of the officers who testified at the hearing. The court noted that the State contended that the defendant's conviction for aggravated robbery occurred after the offenses in the case at bar and could not be used to enhance his sentence. The court found that there was an eighteen-month delay before the case was presented to the grand jury, which was "presumptively prejudicial" and weighed against the State. The court found that the delay was not an intentional delay to allow the State to gain a tactical advantage, observing that "[t]he greatest reason for the delay was bureaucratic indifference." The court found that the negligent delay did not weigh as heavily against the State as would an intentional delay. The court found that the defendant did not request a speedy trial but did ask for disposition on untried detainers. The court found that this factor weighed slightly in favor of the defendant. The court noted that the delay was partially

5

attributable to the defendant, noting that "the case would not have been retired until the completion of other matters" if the defendant had not been arrested and confined for a separate criminal charge. The court found that the defendant had failed to demonstrate any prejudice resulting from the delay. The defendant failed to show that he was subject to oppressive pre-trial incarceration that maximized his anxiety and concern, as the defendant was released from jail shortly after the preliminary hearing and was incarcerated on an unrelated criminal charge. The court acknowledged that some of the recordings of the chase were lost but found that the combination of Detective Ownby's video and the eyewitness testimony of the other officers was sufficient to show the defendant's conduct on the day of the incident.

The trial court also found that "a trial conducted without the lost evidence would be fundamentally fair." The court found that the State had a duty to preserve the video from Detective Stokes's vehicle but that a video existed that "depicts the entire chase and capture of the defendant." The court observed that the video showed the chase, "the defendant's driving and passing maneuvers, the various alleged collisions, and evidence of the application of brake lights on patrol vehicles in front of the defendant and/or the other law enforcement vehicles." The court opined that, in some ways, the video from Detective Ownby's vehicle was better than the video from Detective Stokes's vehicle because Detective Stokes's vehicle would not have captured conduct occurring behind the vehicle.

The defendant agreed to plead guilty to the charge of felony evading arrest, and the State dropped all of the remaining charges against him. The defendant received a five-year sentence as a Range II offender that was to be served consecutively to his twelve-year sentence for aggravated robbery. As part of his guilty plea, the defendant reserved two certified questions of law. The trial court, the State, and the defendant all agreed that the certified questions of law were dispositive of the case, and the order was incorporated into the final judgment of conviction. We proceed to consider his claims.

## ANALYSIS

On appeal, the defendant has reserved the following certified questions of law:

(1) Whether the approximately 18 month pre-indictment delay caused the defendant substantial prejudice to the defendant's right to a fair trial and that the delay was an intentional device to gain tactical advantage over the defendant.

(2) Whether the State's destruction of two dashboard camera videos, one of which was specifically requested to be preserved, containing

6

potentially exculpatory evidence violated the defendant's right to a fair trial.

Pursuant to Tennessee Rule of Criminal Procedure 37(b)(2)(A), a defendant may plead guilty but reserve the right to appeal a certified question of law. To properly reserve the question, the defendant must meet the following requirements:

> (i) the judgment of conviction or order reserving the certified question that is filed before the notice of appeal is filed contains a statement of the certified question of law that the defendant reserved for appellate review;

> (ii) the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved;

> (iii) the judgment or order reserving the certified question reflects that the certified question was expressly reserved with the consent of the state and the trial court; and

> (iv) the judgment or order reserving the certified question reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case.

Tenn. R. Crim. P. 37(b)(2)(A)(i)-(iv).

Failure to properly reserve a certified question of law will result in the dismissal of the appeal. *State v. Pendergrass*, 937 S.W.2d 834, 838 (Tenn. 1996). The parties agree that the first certified question of law is properly before this court. As to the second certified question, however, the State contends that the certified question is not dispositive of the case and that we should dismiss the appeal.

### A. Pre-Indictment Delay

The defendant argues that the eighteen-month pre-indictment delay was prejudicial and a result of the State's attempt to gain a tactical advantage at trial. The defendant argues that he was prejudiced because he was denied potentially exculpatory evidence and exposed to the risk of a lengthier sentence. He contends that the State gained a tactical advantage by destroying potentially exculpatory evidence, and he appears to argue that the delay granted the State a tactical advantage because the loss of the video adversely impacted the defendant's potential "§1983" lawsuit.

7

A delay between the commission of an offense and the return of an indictment does not violate a defendant's constitutional right to a speedy trial. *State v. Dykes*, 803 S.W.2d 250, 255 (Tenn. Crim. App. 1990), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000). Such a delay may implicate a defendant's Fifth and Fourteenth Amendment right to due process. *Id.* The indictment must be dismissed "if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to the appellee's rights to a fair trial and the delay was an intentional device to gain a tactical advantage over the accused." *Id.* (quoting *United State v. Marion*, 404 U.S. 307, 324 (1971)). In order to establish a due process violation, the defendant must show that "(a) there was a delay, (b) the accused sustained actual prejudice as a direct and proximate result of the delay, and (c) the State caused the delay in order to gain tactical advantage over or to harass the accused." *State v. Gray*, 917 S.W.2d 668, 671 (Tenn. 1996) (quoting *Dykes*, 803 S.W.2d at 256). Of these three factors, the most important, though not always determinative, is prejudice to the accused. *State v. Carico*, 968 S.W.2d 280, 285 (Tenn. 1998).

As the trier of fact, the trial court is entrusted with questions of witness credibility, the weight and value of the evidence, and resolving conflicts in the evidence. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). A trial court's findings of fact at a motion to dismiss hearing will be upheld unless the evidence preponderates against them. *See id.* The trial court's application of law to the facts is a question of law that this court reviews de novo. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

We note that we may only consider the certified question before us; accordingly, the defendant's appeal does not encompass any claims of prejudice due to any delay after the defendant was indicted. In finding that the defendant's right to a fair trial was not violated by the pre-indictment delay, the trial court applied the four-prong test articulated by *Barker v. Wingo*, 407 U.S. 514, 530 (1972) and adopted by our supreme court in *State v. Bishop*, 493 S.W.2d 81, 83-85 (Tenn. 1973), which is employed to analyze alleged violations of the right to a speedy trial. However, as we stated above, a delay between the commission of the offense and the return of an indictment does not implicate the defendant's Sixth Amendment right to a speedy trial. Instead, a pre-indictment delay infringes upon a defendant's Fifth and Fourteenth Amendment due process rights, and the *Marion-Dykes* test is the proper analysis for such claims. Despite the application of an incorrect legal standard, we agree with the trial court's finding that the defendant's right to a fair trial was not violated by the pre-indictment delay.

Here, there was a delay of eighteen months between the offense and the time that the defendant was indicted. However, the defendant has not shown that he suffered any prejudice as a result of the delay or that the State caused the delay to obtain a tactical advantage over the defendant. The unavailability of the video recordings did not result

8

from the pre-indictment delay because the recordings were lost over two years after the defendant was indicted. Further, Detective Ownby's dashboard camera recorded the incident in its entirety, and the recording and testimony of the other officers sufficiently showed that the defendant committed the felony of evading arrest, the only offense with which the defendant was ultimately convicted. Any claim regarding a potential "§1983" lawsuit is unrelated to the criminal prosecution of the defendant and is not evidence of prejudice. The defendant also cannot show that the delay was intentionally caused by the State in order to gain a tactical advantage over the defendant. The trial court found that the delay in indicting the defendant was not an intentional delay but was the result of "bureaucratic indifference." The trial court accredited the State's proof that this delay was due in part to an expected federal prosecution of the defendant that did not materialize. Finally, in order to dismiss the indictment as a result of the consecutive sentences that the defendant received, we would have to conclude that the State intentionally delayed the indictment to ensure that the defendant would receive an additional period of incarceration. *See State v. Paul Ray Jones*, No. 01-C-01-9212-CR-00384, 1993 WL 345544, at *1-2 (Tenn. Crim. App. Sept. 9, 1993). The defendant presented no evidence to support such a conclusion. Accordingly, we conclude that the defendant has not established that the pre-indictment delay violated his right to a fair trial. The defendant is not entitled to any relief.

## B. Right to a Fair Trial

The defendant argues that the loss of the video recording from Detective Stokes' vehicle violated his right to a fair trial. He contends that the State had a duty to preserve the recordings and that they contained potentially exculpatory evidence instrumental to his defense.

In order to reach the merits of a certified question of law, this court must first determine that the question is dispositive of the case. *State v. Preston*, 759 S.W.2d 647, 651 (Tenn. 1988). "An issue is dispositive when this court must either affirm the judgment or reverse and dismiss. A question is never dispositive when we might reverse and remand for trial. . . ." *State v. Wilkes*, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984). Although the parties and the trial court may be in agreement that an issue is dispositive, the reviewing court is not bound by such an agreement and must make an independent determination that the certified question is dispositive. *State v. Dailey*, 235 S.W.3d 131, 134-35 (Tenn. 2007). This court does not have jurisdiction to decide certified questions of law that are not dispositive. *State v. Walton*, 41 S.W.3d 75, 96 (Tenn. 2001).

If a trial court finds that a trial conducted without lost or destroyed evidence would not be fundamentally fair, the court "is afforded wide discretion in fashioning a remedy."

9

*State v. Merriman*, 410 S.W.3d 779, 796 (Tenn. 2013) (citing *State v. Ferguson*, 2 S.W.3d 912, 917 (Tenn. 1999)). The appropriate remedy may depend on the egregiousness of the conduct and the evidentiary value of the lost evidence. *Id.* While the trial court may determine that the indictment must be dismissed, dismissal "will not always be the appropriate remedy for a *Ferguson* violation." *Id.* Thus, even if we were to conclude that the defendant's right to a fair trial was violated, such a conclusion would not necessarily require the dismissal of the indictment. Therefore, we conclude that the question of law is not dispositive of the case and that we do not have jurisdiction to consider the question.

## CONCLUSION

Based upon the foregoing, we conclude that the trial court properly denied the motion to dismiss due to a pre-indictment delay and that we do not have jurisdiction to consider the defendant's second certified question of law. Therefore, we affirm the judgment of the trial court as to the first question and dismiss the second question due to a lack of jurisdiction.

_____
JOHN EVERETT WILLIAMS, JUDGE

10