**STATE of Tennessee, Appellee,**

v.

**Harold Winter GRAY, Appellant.**

Supreme Court of Tennessee,
at Nashville.

Feb. 26, 1996.

B.F. "Jack" Lowery, Lebanon, for appellant.

Charles W. Burson, Attorney General & Reporter, Eugene J. Honea, Assistant Attorney General, Nashville, Tom P. Thompson, Jr., District Attorney General, John D. Wooten, Jr., Assistant District Attorney General, Hartsville, for appellee.

## OPINION

BIRCH, Justice.

On September 15, 1992, a Wilson County grand jury indicted Harold Winter Gray, the defendant, upon a single charge of carnal knowledge of a female under the age of twelve.[1] The indictment alleged that the offense occurred in the early months of 1950.

In a pretrial motion to dismiss the indictment, Gray contended that prosecution was barred by the statute of limitations and that the indictment violated his due process and speedy trial rights under the constitutions of the United States and the State of Tennessee. He based these contentions on the prejudice to his rights occasioned by the forty-two-year period between the act alleged and the indictment. The trial court agreed with Gray's contentions and dismissed the indictment.

The Court of Criminal Appeals considered the State's appeal pursuant to Rule 3, Tenn. R.App.P. After a searching analysis, the court rendered an opinion in which it articulated three significant conclusions: (1) the general savings statute saved the prosecution

---

1. The statute under which Gray was indicted provided that "[a]ny person who shall carnally know and abuse a female under the age of twelve years shall, on conviction, be punished as in the case of rape." Code of Tenn. § 10784 (1932). Rape was punishable by electrocution or life imprisonment. *Id.* § 10781. The carnal knowledge statute was amended in 1974, and the punishment for conviction was reduced to ten years to life. Tenn.Code Ann. § 39–3705 (Supp.1974). In 1978, the statute was repealed by Tenn.Code Ann. §§ 39–3701 to 39–3708 (Supp.1978). Under today's law, Gray would be charged with "rape of a child," Tenn.Code Ann. § 39–13–522 (Supp.1995), and the statute of limitations is either four years or the date the child reaches the age of majority, whichever occurs later. Tenn. Code Ann. § 40–2–101(d) (1990).

of the cause from the operation of the statute of limitations;[2] (2) the State bore no responsibility for the delay in prosecuting the case; and (3) the State did not violate Gray's due process rights. Pursuant to this analysis, the Court of Criminal Appeals reversed the trial court's judgment, reinstated the indictment, and remanded the cause for further proceedings.

We accepted Gray's application for review under Rule 11, Tenn.R.App.P., in order to determine whether "pre-accusatorial delay" in this case violated Gray's constitutional rights. We use "pre-accusatorial" to refer to the period of time between the commission of an offense and its disclosure to law enforcement authorities. Other jurisdictions refer to this period as "pre-indictment." However, under the facts of this case, we believe "pre-accusatorial" is more appropriate because "pre-indictment" suggests that the State has knowledge of the offense, which is not the case here.

After a thorough examination of the record and a careful consideration of the issue presented, we have concluded that the prosecution should not continue. Accordingly, for the reasons outlined below, we reverse the judgment of the Court of Criminal Appeals and reinstate the trial court's order dismissing the indictment.

## I

At the outset, we agree with the Court of Criminal Appeals that the prosecution of Gray is not barred by the statute of limitations. However, because we find the constitutional issue dispositive, we need not further address the statute of limitations issue.

## II

Mary Joanne Gray Perdue, who was approximately fifty-three years old at the time of the hearing, testified that in early 1950, Gray, her uncle, penetrated her vaginally. In 1950, Gray was approximately nineteen,

and Perdue was eight. She testified that Gray told her at the time that he would be killed if she told anyone. Thereafter, rumor and innuendo about Gray's sexual conduct with Perdue and other nieces coursed through the small community where they lived. Nothing definitive was said or done, however, until early 1992. On that occasion, Perdue had a conversation with her cousin in which the women expressed to each other their concern for Gray's granddaughter. The apparent root of their concern was the fear that Gray might treat the granddaughter or other young female family members as he had treated them.

Following the conversation with her cousin, Perdue discussed the matter with other family members and an attorney. It was after these discussions that Perdue decided to lodge a formal complaint against Gray; she accomplished this by contacting the District Attorney General. The matter was referred to Agent Donna Pence, Tennessee Bureau of Investigation. Perdue cooperated with the investigators and the District Attorney General; the indictment followed shortly thereafter. When asked, at the hearing on Gray's motion to dismiss, why she had waited so long before coming forward with this information, Perdue responded, "For years I thought that I had done something that possibly caused him to do this to me. But over the years I realized that there's nothing that a young child can do to cause an adult to do this to them."

On appeal, Gray insists that the trial court properly dismissed the indictment against him as violative of his due process rights because (1) the victim waited forty-two years before filing charges against him, and (2) there was no justification for the delay. He urges that the pre-accusatorial delay caused him substantial prejudice because he "is placed with the awesome task of trying to recall people and events [forty-two] years ago."

---

2. Under the savings statute, "any offense, as defined by [a repealed statute], committed while such statute ... was in full force and effect shall be prosecuted under such ... statute in effect at the time of the commission of the offense." Tenn.Code Ann. § 39–114 (Supp.1975). Cur-

rently, this statute is codified at Tenn.Code Ann. § 39–11–112 (1991), which provides that "in the event the subsequent act provides for a lesser penalty, any punishment imposed shall be in accordance with the subsequent act."

In Tennessee, the law is well-settled that "[d]elay between the commission of an offense and the commencement of adversarial proceedings does not violate an accused's constitutional right to a speedy trial." *State v. Dykes*, 803 S.W.2d 250, 255 (Tenn.Crim. App.1990) (citing *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *State v. Baker*, 614 S.W.2d 352 (Tenn. 1981); *State v. Walton*, 673 S.W.2d 166, 170 (Tenn.Crim.App.1984); *Boswell v. State*, 528 S.W.2d 825, 826–27 (Tenn.Crim.App.1975)). However, as the *Dykes* court further recognized, the " 'delay may occur in such a manner that the defendant's Fifth Amendment right to due process—in contrast to the Sixth Amendment right to speedy trial—is violated.' " *Id.* (quoting *Baker*, 614 S.W.2d at 354); *see also United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). Additionally, as the Court of Criminal Appeals once noted, "[w]hile there is no constitutional right to be arrested, courts have recognized that an unreasonable delay between the commission of the offense and the arrest may violate the defendant's constitutional rights if the delay results in prejudice to him or was part of a deliberate, purposeful and oppressive design for delay." *Halquist v. State*, 489 S.W.2d 88, 93 (Tenn. Crim.App.1972), *rev'd on other grounds*, *State v. Jones*, 598 S.W.2d 209 (Tenn.1980) (citation omitted). Thus, according to the *Dykes* court,

> [b]efore an accused is entitled to relief based upon the delay between the offense and the initiation of adversarial proceedings, the accused must prove that (a) there was a delay, (b) the accused sustained actual prejudice as a direct and proximate result of the delay, and (c) the State caused the delay in order to gain tactical advantage over or to harass the accused.

803 S.W.2d at 256.

Gray and the State address the *Dykes* test in their briefs. On one hand, Gray contends that he has satisfied the requirements of *Dykes*. In his view, the Court of Criminal Appeals applied the third prong of *Dykes* too narrowly. He urges that the State stands in the shoes of the victim; therefore, he attributes to the State the victim's delay in filing charges. Assuming, *arguendo*, that *Dykes* is the standard, we find this argument unpersuasive and agree with the Court of Criminal Appeals that there is no evidence in the record that the State caused the delay. The State cannot be held responsible for conduct of which it had no knowledge, to which it had not acquiesced, and over which it had no control.

On the other hand, the State insists that the trial court erred in finding that the delay in bringing the prosecution violated Gray's Fifth Amendment due process rights because the trial judge ignored the *Dykes* requirements. The Court of Criminal Appeals agreed, finding the third prong of *Dykes* dispositive. We conclude otherwise. In *Dykes*, the Court of Criminal Appeals addressed the issue whether the delay between the alleged commission of an offense and the initiation of criminal proceedings violated the defendant's speedy trial or due process rights where the State had knowledge of the offense. The case before us is different. First, in *Dykes* the interim between the alleged offense and the indictment was approximately one year. In contrast, the interim in the case under review was forty-two years. Second, in *Dykes*, the State had knowledge of the offense from the time of commission. In the instant case there was no such knowledge. Thus, we find the *Dykes* three-pronged test to be inapposite here.

In the case before the Court, Perdue has accused Gray of sexually penetrating her when she was eight years old in early 1950. She testified that for more than forty years—until March 26, 1992—she kept her silence about the incident. There is no evidence in the record that Gray tried to conceal his alleged conduct or that he threatened the victim in any way. Perdue testified that she had been "bothered" by her memory of the incident throughout her childhood and adult life. Finally, the record shows that she continued to interact with the defendant through the years. Under these facts, the trial court correctly held that forty-two years "is much too long to wait before prosecuting an alleged offense where the prosecutor [vic-

tim] is of legal age for the great majority of this time...." [3]

In holding that *Dykes* does not apply to the circumstances here, we are left with the task of determining the appropriate standard by which to measure pre-accusatorial delay—the period of time between the commission of the offense and its disclosure to law enforcement authorities. This precise issue has neither been discussed nor decided in Tennessee. Hence, we look to other jurisdictions for guidance.

The California Supreme Court's opinion in *People v. Morris*, 46 Cal.3d 1, 249 Cal.Rptr. 119, 756 P.2d 843 (1988), provides some guidance, although it deals with the related issue of pre-indictment delay. Morris was sentenced to death for a September 1978 murder. 249 Cal.Rptr. at 125, 756 P.2d at 849. By February 1979, the police had ample evidence linking Morris to the crime; however, charges were not filed against him until May 1982. *Id.* In *Morris*, the court declared, "An unreasonable delay between the time an offense is committed and an accusatory pleading is filed may violate a defendant's right to a fair trial and due process of law under ... the California Constitution and the Fifth and Fourteenth Amendments to the United States Constitution." 249 Cal.Rptr. at 142, 756 P.2d at 866. The California court further stated that a pre-complaint delay must be evaluated by weighing any prejudice the delay caused the defendant against justification for the delay. *Id.* The court continued,

> "In the balancing process, the defendant has the *initial* burden of showing some prejudice before the prosecution is required to offer *any* reason for the delay. The showing of prejudice requires some evidence and cannot be presumed." Prejudice may be shown by loss of material witnesses due to lapse of time or loss of evidence because of fading memory attributable to the delay.

249 Cal.Rptr. at 142, 756 P.2d at 866 (citations omitted).

The Court of Appeals of New York also provides some guidance on the issue. In *People v. Singer*, 44 N.Y.2d 241, 405 N.Y.S.2d 17, 376 N.E.2d 179 (1978), the defendant was convicted of felony-murder. The crime occurred on October 22, 1970; however, the defendant was not arrested and charged until May 1974. In its discussion, the court commented on the distinction the United States Supreme Court makes when evaluating pre-arrest or pre-accusatorial delay and post-arrest or post-indictment delay. The New York court noted,

> Characterization of the delay as "preindictment" or "postindictment" is often determinative. Delay in bringing the defendant to trial after indictment or arrest is measured against the Sixth Amendment speedy trial requirement which takes into account a number of factors, including actual or potential prejudice to the defendant's case through the loss of witnesses and the dulling of memory. Preindictment delay, on the other hand, is governed by the due process clause which generally requires a showing of actual prejudice before dismissal would be warranted.

405 N.Y.S.2d at 24, 376 N.E.2d at 185 (citations omitted). The court further stated that this "distinction is based essentially on the theory that the speedy trial guarantee was designed primarily 'to prevent undue and oppressive incarceration prior to trial, [and] to minimize anxiety and concern accompanying public accusation.'" *Id.* (quoting *Marion*, 404 U.S. at 320, 92 S.Ct. at 463). Moreover, observed the court, "[t]he distinction assumes that these considerations do not become relevant until the defendant has been arrested or formally accused." *Id.*

Further, while the Supreme Court "has recognized ... that any delay in bringing the defendant to trial may impair his right to a fair trial, ... it has assumed that the Statute of Limitations is the primary safeguard against potential prejudice when there has been a delay in arresting or formally charging the defendant." *Id.* (citing *Marion*, 404

---

**3.** *This reasoning is consistent with the apparent intent of the legislature because it has since amended the statute of limitations in child sex abuse cases so that prosecution must be initiated within four years or no later than the date the child reaches majority, whichever occurs later. Tenn.Code Ann. § 40–2–101(d) (1990).*

U.S. at 321–23, 92 S.Ct. at 463–65). In *Marion*, the Court observed that the statute of "limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." 404 U.S. at 323, 92 S.Ct. at 465.

Other courts point to statutes of limitations as the first barrier of protection against unwarranted unconstitutional prejudice. *See, e.g., State v. Prince,* 581 So.2d 874, 877 (Ala. Crim.App.1991) ("statute of limitations is the principal device ... to protect against prejudice arising from a lapse of time between the commission of a crime and an indictment or arrest"); *State v. Chavez,* 111 Wash.2d 548, 761 P.2d 607, 613 (1988) ("statutes of limitations are the 'primary guarantee against bringing overly stale criminal charges' ") (quoting *State v. Haga,* 8 Wash.App. 481, 507 P.2d 159 (1973)). However, in the case under review, the statute of limitations affords Gray no protection whatsoever against prejudice possibly inherent in the delay. The reason is that the offense here charged has no period of limitation. Thus, we are reluctant to assess the delay here under the limited due process standard established by the Supreme Court in *Marion* and *Lovasco.*

Having reviewed the existing law on the issue, we observe that the *Marion–Dykes* approach to pre-accusatorial delay is, in application, extremely one-sided. It places a daunting, almost insurmountable, burden on the accused by requiring a demonstration not only that the delay has caused prejudice but also that the State orchestrated the delay in order to obtain a tactical advantage. Thus, under the facts before us, application of so stringent a standard would force a result we would consider unconstitutional, unwarranted, and unfair. To accomplish justice while preserving Gray's right to a fair trial requires, in our view, a less stringent standard.

■ Today we articulate a standard by which to evaluate pre-accusatorial delay and hold that an untimely prosecution may be subject to dismissal upon Fifth and Fourteenth Amendment due process grounds and under Article I, §§ 8 and 9, of the Tennessee Constitution even though in the interim the defendant was neither formally accused, restrained, nor incarcerated for the offense. In determining whether pre-accusatorial delay violates due process, the trial court must consider the length of the delay, the reason for the delay, and the degree of prejudice, if any, to the accused.[4] *See Lovasco,* 431 U.S. at 790, 97 S.Ct. at 2048–49 ("proof of prejudice is generally a necessary but not sufficient element of a due process claim, ... the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused").

■ We now apply the standard we have articulated to the facts and circumstances here present to determine whether the prosecution of Gray shall proceed. We hold that it shall not. We find that the length of the delay was profoundly excessive, and no reasonable justification for such delay has been demonstrated. Gray has made a *prima facie* showing of prejudice. As the trial court correctly found, the record reveals at least three instances of prejudice: (1) the lapse of time has diminished the victim's memory; (2) witnesses thought to be material are now unavailable; and (3) the victim cannot specifically date the incident, thereby requiring Gray to account for his whereabouts and his conduct during a six-month period forty-two years past.

As the Supreme Court declared in *Morrissey v. Brewer,* "due process is flexible and calls for such procedural protections as the particular situation demands." 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *accord State v. Pearson,* 858 S.W.2d 879, 885 (Tenn.1993). Finally, under the

---

4. We note that other states have framed their own tests for determining when pre-accusatorial delay violates due process rights. For example, the State of Washington applies the following three-prong test: " '(1) The defendant must show he was prejudiced by the delay; (2) the court must consider the reasons for the delay; and (3)

if the State is able to justify the delay, the court must undertake a further balancing of the State's interest and the prejudice to the accused.' " *State v. Chavez,* 111 Wash.2d 548, 761 P.2d 607, 613 (1988) (quoting *State v. Alvin,* 109 Wash.2d 602, 746 P.2d 807 (1987)).

facts of this case, prosecution of Gray would violate the concepts of fundamental fairness and substantial justice embodied in the due process clause of the Fifth and Fourteenth Amendments of the United States Constitution, as well as Article I, § 8, of the Tennessee Constitution.

Accordingly, the judgment of the Court of Criminal Appeals is reversed; the trial court's order dismissing the indictment is reinstated.

ANDERSON, C.J., and DROWOTA, REID, WHITE, JJ., concur.