IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
February 2, 2016 Session


STATE OF TENNESSEE v. CHARLES BEATY


Appeal from the Criminal Court for Shelby County
No. 1402907     Glenn Ivy Wright, Judge

_____

No. W2015-00223-CCA-R3-CD  -  Filed August 16, 2016

_____


The State appeals from the trial court's dismissal of a three-count indictment based on the trial court's finding that there was an excessive delay in prosecuting the defendant, Charles Beaty.  The State contends that the trial court erred in dismissing the indictment on finding a violation of the defendant's right to a speedy trial and due process.  We conclude that the trial court correctly dismissed any offenses which were merely the reindictment of a previously dismissed case.  However, the trial court erred in dismissing any new charges, because the defendant's right to a speedy trial was not violated and the defendant failed to show that he was prejudiced by the delay as required for due process relief.  Accordingly, we remand for further proceedings in accordance with this opinion.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part; Reversed in Part; Case Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and TIMOTHY L. EASTER, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Cavett Ostner, Assistant District Attorney General, for the Appellant, State of Tennessee.

Stephen Bush, District Public Defender; and William L. Johnson (at hearing), and Phyllis Aluko (on appeal), Assistant District Public Defenders, for the Appellee, Charles Beaty.


**OPINION**

# FACTUAL AND PROCEDURAL HISTORY

On February 12, 2013, the defendant was indicted for one count of rape of a child occurring between May 1, 2006, and September 1, 2006 in case number 13-00596. The defendant apparently filed a motion to dismiss some months after he was indicted, and the trial court held two hearings on the motion in November 2013, close to the time the case was set for trial.

During the hearings, the defendant and State agreed that the charged incident came to the attention of the State when the victim, who was seventeen at the time she reported the crime, came to the Child Advocacy Center in February 2012. The defendant alleged that he had filed a motion for a bill of particulars regarding the time and place of the rape and that the State was unable to narrow the timeframe and only informed the defendant that the incident took place in "Orange Mound." The defendant argued that the case should be dismissed because of the delay between the time of the event and the time it was reported. He also argued for dismissal because he had been unable to locate the victim's mother and some of the victim's siblings but acknowledged that "the State found them, just last week."

The State responded that the defendant had access to the victim's statement and the entire case file. The State noted that coordinating cases with the Child Advocacy Center took time and caused the lapse of a year between the reporting of the rape and the indictment. The trial court stated on the record that it was only "concerned with the pre-indictment time." The prosecutor informed the court that he had recently discovered a family witness and had attempted to recover a computer file containing a diary. The State made the victim, who was nineteen at the time of the hearing, available to the defendant's attorney to interview.

The trial court denied the defendant's motion to dismiss, noting that although it was concerned with the pre-reporting delay, it did not find anything improper in the State's actions. The trial court further found that the State was providing the defendant with the contact information of witnesses and that postponing the trial would eliminate any prejudice from the late discovery of these witnesses.

The trial was set to commence on June 16, 2014. On that day, the victim's recollection regarding the date of the rape changed. The State told the trial court that the victim had previously stated that she was eleven years old at the time of the offense; however, on the date of the trial, her recollection was that she was nine years old. Because the event that the victim would testify to at trial fell outside the dates encompassed by the indictment, the State sought to amend the indictment to reflect the new facts before it.

The defense opposed any amendment and renewed the motion to dismiss based on "speedy trial" grounds. Defense counsel noted that he had interviewed the victim and that she had told him that the rape happened in 2006, and he insisted that the case be tried or dismissed. The defendant had apparently been in prison for sixteen months as of the date of the scheduled trial.

The trial court found that it was not unusual in cases involving child abuse for the allegations to surface some time after the abuse; however, the trial court stated it was concerned with the defendant's right to "a fair trial and a chance to defend himself." The court concluded, "Now we're talking about allegations now that have occurred over ten years ago. I'm going to dismiss it." The trial court did not state on the record whether it was dismissing the charge with or without prejudice.

On the next day, June 17, 2014, the State reindicted the defendant in case number 14-02907. The new indictment charged one count of rape of a child occurring between April 4, 2002, and June 30, 2006; one count of rape of a child occurring between July 1, 2006, and April 3, 2007; and one count of aggravated sexual battery occurring between April 4, 2002, and April 3, 2007.

On the same date, in case number 13-00596, the trial court entered a judgment dismissing the prosecution. In the section marked "Special Conditions" on the judgment form, the trial court noted, "Dismissed pursuant to speedy trial violation."

On July 16, 2014, the defendant moved to dismiss the new charges, asserting that the original indictment was dismissed pursuant to Tennessee Rule of Criminal Procedure 48(b). He argued that the new indictment should also be dismissed pursuant to Rule 48(b) and because it violated his Fifth and Sixth Amendment rights. The State opposed dismissal, asserting that the prior dismissal had been without prejudice under Tennessee Rule of Criminal Procedure 48(b).

The trial court held a hearing on the new motion to dismiss, at which the defendant testified. The defendant stated that he and his attorney tried to pinpoint where he was living in 2006, and he investigated his residence in Gulfport, Mississippi. His attorney attempted to get employment records and contact a woman with whom he had been living in Gulfport, but she did not have any information helpful to the defense. On cross-examination, he testified that he had lived in Gulfport around 2008 to 2009. The defendant stated that eventually, he found out "through discovery" that he had been at one of several Memphis addresses, particularly one at Orange Mound. He testified that he recalled that he was living at the Orange Mound address with ten to fifteen people in a large house and that several of the residents were related to the victim. When asked if he

3

recalled witnesses that he thought "knew, or should have known something about this case," he identified his uncle, Richard Beaty. He initially testified that his uncle died in 2011 and then stated it was "between 2011 and 2012." He also identified someone named Georgia "Peaches" Parker and her boyfriend, neither of whom he could locate. He testified that he was "not able to come up with anything" regarding where he had lived during the earlier dates alleged in the new indictment. On cross-examination, however, he recalled that he was working at a Pizza Hut for three or four years beginning in 2004 or 2005 and that while he worked at Pizza Hut, he stayed at the Millbranch Apartments with his sister. He testified he stayed with his sister for five to six years before moving in with his child's mother and then to Gulfport. He testified he had been in jail for seventeen months awaiting trial. At the end of the hearing, the trial court took the matter under advisement.

On January 9, 2015, the trial court dismissed the new indictment, noting in the judgment form that the dismissal was "on speedy trial grounds." The order accompanying the dismissal found that "[t]he Defendant submitted evidence that witnesses that could have supported his defense, have died or cannot be located." The trial court found that the amendment proposed by the State to the indictment in June was substantial and material; that the State had ample opportunity to correct the indictment before "trial"; that there were significant delays both "pre and post trial"; that "no legal reason has been offered to explain the delay"; and that the defendant offered proof of prejudice. It accordingly dismissed both the 2013 and the 2014 indictments with prejudice.

## ANALYSIS

The State appeals, arguing that the trial court abused its discretion in dismissing the indictments because there was no showing that the delay was lengthy, due to any misconduct by the State, or prejudicial to the defense. The State asserts that any due process argument is waived but that in any case, the delay was not excessively lengthy, the defendant failed to demonstrate particularized prejudice, and the delay cannot be attributed to misconduct by the State. The defendant argues that the State violated his due process rights and right to a speedy trial. At oral argument, the defendant also raised the argument that the State could not reindict the defendant after the initial indictment was dismissed.

### I. Dismissal of Original Indictment and Validity of Reindictment

We begin by defining the precise issues before us. Initially, we note that the State did not appeal the dismissal of the original indictment, case number 13-00596. That judgment became final thirty days after its entry. *State v. Pendergrass*, 937 S.W.2d 834,

837 (Tenn. 1996); Tenn. R. App. P. 4(a)-(c).  When the judgment became final, the trial court also lost jurisdiction to amend it.  *State v. Moore*, 814 S.W.2d 381, 382 (Tenn. Crim. App. 1991).  Accordingly, the portion of the trial court's January 9, 2015, order which notes that the original indictment is dismissed "with prejudice" lies outside the trial court's jurisdiction and is void.  *See State v. Green,* 106 S.W.3d 646, 649 (Tenn. 2003).  Because the State did not appeal the dismissal of the original indictment, we do not consider whether the trial court erred in entering that dismissal.  *See State v. Benn*, 713 S.W.2d 308, 311 (Tenn. 1986) (concluding that the trial court's erroneous dismissal with prejudice was not subject to review when the State had not appealed the decision but had chosen to reindict).  The State was at liberty to challenge the dismissal even if it believed that the dismissal was without prejudice.  *See State v. Casey Austin*, No. W2004-01448-CCA-R3-CD, 2005 WL 659018, at *2-3 (Tenn. Crim. App. Mar. 22, 2005) (reviewing the trial court's decision to dismiss an indictment without prejudice when the State's main witness was abroad for military service).

The State argues that the trial court's dismissal of the first indictment was without prejudice under Tennessee Rule of Criminal Procedure 48(b).  In *Benn*, the Tennessee Supreme Court clarified that a dismissal with prejudice bars further prosecution of the same offense.  713 S.W.2d at 311.  Accordingly, if the trial court's initial dismissal was without prejudice, then the State had the option to reindict the defendant, and the dismissal with prejudice of the second indictment is before us in its entirety.  If, on the other hand, the trial court's initial dismissal was with prejudice, the State could not reindict on the dismissed charge.  We note that the new indictment encompasses criminal behavior in addition to that charged in the original indictment.

The grounds for the trial court's oral dismissal were stated with some amount of ambiguity.  The trial court stated that it was concerned about "the age of the alleged events" and that while it was not unusual for such allegations not to surface immediately, the defendant was "entitled to a fair trial and a chance to defend himself."  The court found that the events occurred over ten years prior to the scheduled trial, and the court consequently dismissed the indictment. The State apparently understood the reference to the defendant's ability to defend himself to refer only to the defendant's lack of notice regarding the testimony that the crimes occurred when the victim was nine rather than eleven.  The prosecutor reindicted the next day.  On the same day the defendant was reindicted, the trial court filed a judgment form dismissing the charges.  The written judgment contained the notation that the dismissal was "pursuant to speedy trial violation."

We begin by observing that a defendant may obtain relief due to a delay in prosecution under three separate theories.  First, a defendant may assert that his or her constitutional right to a speedy trial has been violated. U.S. Const. amend VI ("In all

5

criminal prosecutions, the accused shall enjoy the right to a speedy and public trial….”); Tenn. Const. art. I, § 9 (“That in all criminal prosecutions, the accused hath the right to … a speedy public trial”); *see also* T.C.A. § 40-14-101 (“In all criminal prosecutions, the accused is entitled to a speedy trial and to be heard in person and by counsel.”). A Sixth Amendment speedy trial analysis determines whether delay *after the initiation of proceedings*, either by arrest or by formal accusation, has violated the rights of the accused. *State v. Simmons*, 54 S.W.3d 755, 758-59 (Tenn. 2001).

The second avenue for relief is premised on a due process claim. A defendant is entitled to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution and article I, sections 8 and 9 of the Tennessee Constitution. When the accused believes that the delay *prior to* the initiation of proceedings has compromised his right to defend himself and right to a fair trial, he may assert that the delay violates his right to due process. *State v. Utley*, 956 S.W.2d 489, 495 (Tenn. 1997).

A dismissal based on constitutional grounds bars reindictment for the same offense. *State v. Elizabeth Davis*, No. E1999-00373-CCA-R3-CD, 2000 WL 1349263, at *5 (Tenn. Crim. App. Sept. 19, 2000); *see Simmons*, 54 S.W.3d at 759 (concluding that the remedy for a speedy trial violation is reversal of the conviction and dismissal of the charges); *State v. Gray*, 917 S.W.2d 668, 674 (Tenn. 1996) (dismissing charges for due process violation).

The third avenue of relief is Tennessee Rule of Criminal Procedure 48(b). Under Tennessee Rule of Criminal Procedure 48(b), the trial court may dismiss an indictment for unnecessary delay in either “presenting to a grand jury a charge against a defendant who has been held to answer to the trial court” or in “bringing a defendant to trial.” Tenn. R. Crim. P. 48(b). Dismissal under this Rule is not for a constitutional violation but relates to the trial court’s inherent authority over its “own jurisdiction and docket.” *Benn*, 713 S.W.2d at 310. “[A] dismissal on a non-constitutional ground is normally without prejudice to a subsequent reindictment and prosecution.” *Id.*

However, a court may dismiss charges under Rule 48(b) with prejudice. A trial court’s dismissal with prejudice under Rule 48(b) after finding there is no constitutional violation “should be utilized with caution and only after a forewarning to prosecutors of the consequences.” *Benn*, 713 S.W.2d 308, 310. A nonconstitutional dismissal under the Rule should be made after the trial court considers essentially the same factors as a constitutional speedy trial claim, with the exception of asserting a constitutional right to a speedy trial: “the length of the delay, the reasons for the delay, the prejudice to defendant, and waiver by the defendant.” *Id.* at 311. The court “must make express findings of fact on each of the relevant factors listed herein.” *Id.*; *State v. Christopher Carney and Anthony Mitchell*, No. W2007-00705-CCA-R3-CD, 2008 WL 1700230, at *2-3 (Tenn.

6

Crim. App. Apr. 8, 2008) (concluding that the trial court abused its discretion in dismissing indictments based on delayed laboratory reports, as it did not make express findings of fact required by *Benn* and the record contained no evidence of prejudice); *State v. Steve Paige*, No. W2001-03045-CCA-R3-CD, 2003 WL 839809, at *3 (Tenn. Crim. App. Mar. 4, 2003) (concluding that dismissal with prejudice was an abuse of discretion because the trial court did not make express findings or adequately warn the prosecutors and dismissing the case without prejudice).

The decision to dismiss pursuant to Rule 48(b) lies within the trial court's discretion. *State v. Harris*, 33 S.W.3d 767, 769 (Tenn. 2000). A trial court abuses its discretion by applying an incorrect legal standard or reaching a decision against logic or reasoning which causes an injustice to the complaining party. *State v. Merriman*, 410 S.W.3d 779, 791 (Tenn. 2013).

While the trial court's oral dismissal in this case did not specifically state that it was based on a violation of the defendant's constitutional rights or state that the dismissal was with prejudice, we nevertheless conclude that the trial court dismissed the charges based on a finding of a constitutional violation. When the defendant initially moved to dismiss the charges in November of 2013, the charges had been pending for less than one year. The defendant, at the hearing, argued that his Sixth Amendment right to speedy trial and Fifth Amendment due process rights were violated. The defendant pointed to the delay of the victim in reporting the crime and the delay between the reporting and the indictment, and he specifically described the violation as constitutional. When the State moved to amend the indictment on the day the trial was scheduled, the defendant stated that he wished to renew his previous motion for dismissal. He asserted his right to a "speedy trial," stating that he had been subjected to excessive pretrial incarceration and discussing the difficulty of defending charges that occurred over ten years prior to trial. Defense counsel stated that the case "ought to be tried today or it ought to be dismissed today." The trial court noted that it had "reluctantly" denied the prior motion and that the defendant alleged that the passage of time since the offenses had prejudiced his ability to prepare for trial. It accordingly decided to dismiss the case. In doing so, it specifically denied the prosecution's request to amend the indictment. The trial court's written notation on the judgment form also indicated that it was dismissing for a violation of the defendant's right to a speedy trial. The first mention of Tennessee Rule of Criminal Procedure 48(b) in the record before us was after the dismissal of the initial indictment.[1]

---

[1] The defendant, in his motion to dismiss the second indictment, alleged that the trial court had dismissed the initial indictment based on Tennessee Rule of Criminal Procedure 48(b) and on the statutory provision guaranteeing the right to a speedy trial, and he asserted that the prosecution violated his rights to a speedy trial and due process under the state and federal

The judgment form, which specifically noted a speedy trial violation and nowhere mentioned Rule 48(b), put the State on notice that the dismissal was on the constitutional grounds which had been raised by the defense in prior hearings. Accordingly, we conclude that the dismissal was pursuant to the finding of a constitutional violation of the right to a speedy trial and that, while the State could have appealed the dismissal as erroneous, the State could not reindict the defendant for the same offense.

We proceed to analyze the second indictment to determine whether the State can proceed on any portion of it. The first indictment charged that the defendant raped the victim between May 1, 2006, and September 1, 2006. The second indictment charged the defendant with one count of rape of a child occurring between April 4, 2002, and June 30, 2006; one count of rape of a child occurring between July 1, 2006, and April 3, 2007; and one count of aggravated sexual battery occurring between April 4, 2002, and April 3, 2007. The prosecutor told the trial court on the day that trial was set that although the victim had previously affirmed that the offense took place in 2006, her recollection changed on the day of trial, and she then alleged that the offense occurred when she was nine, and not eleven, years old. Because the record is unclear on this point, we remand to the trial court with instructions to determine whether any of the offenses charged in the second indictment are the same as the prior charge which it dismissed with prejudice. If so, those charges must be dismissed because the State chose not to appeal the original dismissal and was not at liberty to reindict on the same offense.

## II. Dismissal of the Second Indictment

Because it appears that the victim came forward with new allegations, including a charge of aggravated sexual battery, on the day that trial was scheduled, we proceed to analyze the State's timely appeal of the dismissal of any charges unrelated to the offense charged in the original indictment.[2] In dismissing the second indictment, the trial court referenced the defendant's constitutional rights to a speedy trial and to due process. It never referred to Tennessee Rule of Criminal Procedure 48(b). The trial court found that there had been significant delays both "pre and post trial." There was no trial in this case; the original indictment took place February 2013 and trial was scheduled for June 2014. The trial court dismissed the charges in the second indictment, finding that there were significant delays, no reason to justify the delays, that the defendant asserted his right to a speedy trial, and that the defendant "offered proof of prejudice." The trial court apparently relied both on the constitutional right to a speedy trial and on the

constitutions. His prior arguments to the trial court, however, referenced only his constitutional rights.

[2] We do not determine here whether there may be other barriers to prosecution, such as joinder, as these issues are not before us.

8

constitutional right to due process in dismissing the charges. The State asserts that the dismissal was erroneous.

## A. Speedy Trial

"The purpose of the speedy trial guarantee is to protect the accused against oppressive pre-trial incarceration, the anxiety and concern due to unresolved criminal charges, and the risk that evidence will be lost or memories diminished." *Utley*, 956 S.W.2d at, 492. The constitutional references to the "accused" and to "criminal prosecution" indicate that "these constitutional rights are implicated only when there is an arrest or a formal accusation". *Simmons*, 54 S.W.3d at 758-59. In evaluating whether a defendant's right to a speedy trial has been violated, the court considers: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice suffered by the defendant from the delay. *State v. Bishop,* 493 S.W.2d 81, 84 (Tenn. 1973) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). A court generally does not look at the factors other than the length of delay unless the length of delay is presumptively prejudicial. *Simmons*, 54 S.W.3d at 759. "[P]ost-accusation delay must approach one year to trigger a speedy trial inquiry." *Id.* However, the reasonableness of the delay depends on the complexity and nature of the case. *Id.* "[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex ... charge." *State v. Hudgins*, 188 S.W.3d 663, 668 (Tenn. Crim. App. 2005) (quoting *Barker,* 407 U.S. at 531). The presumption that delay prior to trial has prejudiced the defense intensifies over time. *Utley*, 956 S.W.2d at 494 (concluding that eight-month delay between arrest and dismissal was not presumptively prejudicial and not addressing remaining factors but analyzing delay between issuance of warrant and actual restraint under due process). "Arrest on one charge does not trigger the right to a speedy trial with respect to another charge filed after the arrest." *State v. Jamie N. Grimes*, No. M2012-00530-CCA-R3-CD, 2013 WL 5761301, at *4 (Tenn. Crim. App. Oct. 22, 2013). Furthermore, "the speedy trial right does not apply to the period of time between the dismissal and re-indictment." *State v. Thomas Lee Carey, Jr.*, No. M2013-02483-CCA-R3-CD, 2015 WL 1119454, at *10 (Tenn. Crim. App. Mar. 10, 2015), *perm. app. denied* (Tenn. Jan. 21, 2016) (citing *State v. Vickers,* 985 S.W.2d 1, 5 (Tenn. Crim. App. 1997)). A dismissal based on the violation of a right to a speedy trial is reviewed for abuse of discretion. *Hudgins,* 188 S.W.3d at 667.

Prejudice is the most important factor to consider. *Simmons*, 54 S.W.3d at 760. However, because it is difficult to demonstrate how delay has impaired the defense, the defendant need not necessarily prove particularized prejudice in claiming a violation of the right to a speedy trial. *State v. Wood*, 924 S.W.2d 342, 348 (Tenn. 1996). Instead, the court must and consider presumptive prejudice as part of "the mix of relevant facts." *Id.* (quoting *Doggett v. United States*, 505 U.S. 647, 655 (1992)).

The new allegations of misconduct in this case were apparently first raised by the State in the second indictment on June 17, 2014. The charges were dismissed with prejudice on January 9, 2015. Because post-accusational delay must approach one year to trigger an inquiry regarding a speedy trial violation, and because a court generally does not look at the factors other than the length of delay unless the length of delay is presumptively prejudicial, we conclude that the right to a speedy trial contained in the Sixth Amendment to the United States Constitution and in article I, section 9 of the Tennessee Constitution was not implicated in the delay between the second indictment and the dismissal. Accordingly, dismissing the second indictment on that ground was erroneous. As we have noted above, the trial court found that the right to a speedy trial was violated by the approximately sixteen-month delay between the original indictment and any postponement of the scheduled trial, and it dismissed the original charge, a decision which has not been appealed.

## B. Due Process

The trial court also premised dismissal of the second indictment on a violation of the defendant's due process rights. Due process requires dismissal "if it were shown at trial that the pre-indictment delay ... caused substantial prejudice to the [defendant's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *Utley*, 956 S.W.2d at 495 (citing *United States v. Marion*, 404 U.S. 307, 324-25 (1971)). Generally, to show a due process violation, the defendant must establish (1) that there was a delay; (2) that the defendant sustained actual prejudice as a direct and proximate result of the delay; and (3) that the State caused the delay in order to gain a tactical advantage or to harass the accused. *Utley*, 956 S.W.2d at 495 (quoting *State v. Gray*, 917 S.W.2d 668, 671 (Tenn. 1996) (quoting *State v. Dykes*, 803 S.W.2d 250, 255 (Tenn. Crim. App. 1990) *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000))); *see State v. Ahmad R. Manning*, No. E2011-01812-CCA-R3-CD, 2013 WL 794154, at *5-6 (Tenn. Crim. App. Mar. 4, 2013) (concluding that the defendant had demonstrated prejudice when he presented evidence that a witness "who would have provided 'powerful first aggressor evidence'" died, that the crime scene had been permanently altered, and that defense witnesses were unknown or uncooperative, but nevertheless reversing for failure to show the State deliberately delayed prosecution to gain a tactical advantage).

However, in a situation in which the State has no prior knowledge of the offense, the standard articulated in *Marion* or *Utley* and *Dykes* "places a daunting, almost insurmountable, burden on the accused." *Gray*, 917 S.W.2d at 673; *compare Ahmad R. Manning*, 2013 WL 794154, at *6-7 (reversing dismissal based on failure to demonstrate misconduct by State but questioning the validity of the requirement). Accordingly, in

cases in which the State had no knowledge of the offenses, the court must consider "the length of the delay, the reason for the delay, and the degree of prejudice, if any, to the accused." *Gray*, 917 S.W.2d at 673.

"'[E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify.'" *State v. Carico*, 968 S.W.2d 280, 285 n.5 (Tenn. 1998) (quoting *Doggett*, 505 U.S. at 656). However, a due process violation, unlike a speedy trial violation, must demonstrate actual prejudice in relation to the due process claim. *Utley*, 956 S.W.2d at 495. "[P]otential forms of prejudice cannot be presumed and instead must be substantiated by the defendant." *Id.*

The applicable statute of limitations joins the right of due process in protecting the accused from excessive pre-accusatory delay. *Utley*, 956 S.W.2d at 493; *Carico*, 968 S.W.2d at 285 n.3 ("[A] statute of limitations normally is the primary safeguard against infringement upon due process resulting from long delays."). The Legislature has specifically tied the initiation of proceedings for sexual offenses against children to the time that the victim reaches adulthood. For the offense of rape of a child or aggravated sexual battery committed against a child on or after July 1, 1997, but prior to June 20, 2006, the prosecution must commence either by the time allowed for in the statute of limitations for that class of felony or by the time the child reaches twenty-one years of age, whichever comes later. T.C.A. § 40-2-101 (g)(2) (2010). For the offenses in this case committed after June 20, 2006, the Legislature extended the statute of limitations to no later than twenty-five years after the child turns eighteen. T.C.A. § 40-2-101(h)(1), (2). We note that the prosecution for the offenses was commenced within the applicable statutory periods. *See State v. Earl Junior Pike*, No. 01C01-9804-CR-00168, 1999 WL 737876, at *4 (Tenn. Crim. App. Sept. 22, 1999) (noting that the defendant's prosecution was well within the statute of limitations, whereas in *Gray*, there was no limitations period).

The defendant argues that the prosecution violates his due process rights because the crimes were committed between approximately 7 and 12 years prior to the indictment. In *Carico*, the defendant was accused of various sexual offenses by a child victim who then recanted her testimony under the influence of her mother. *Carico*, 968 S.W.2d at 282-83, 285. When the victim renewed the allegations seven years later, the defendant asserted his due process rights would be violated by prosecution. *id.* The Tennessee Supreme Court found that seven years was not "'profoundly excessive'" but "sufficient to require a careful review of the cause and results of the delay." *Id.* (quoting *Gray*, 917 S.W.2d at 673). The Court determined that the defendant had shown no prejudice and that his due process rights were accordingly not violated. *Carico*, 968 S.W.2d at 285. In *Gray*, on the other hand, the initiation of proceedings for rape of a child after the lapse of forty-two years was found to violate the defendant's due process rights because the

victim's memory had diminished, material witnesses were unavailable, and the victim could not specify the date of the incident. 917 S.W.2d at 673.

In this case, the length of the delay was between 7and 12 years. As in *Carico*, such a delay involving a child victim is not "'profoundly excessive'" but requires "careful review." *Carico*, 968 S.W.2d at 285 (quoting *Gray*, 917 S.W.2d at 673). We note that some of the offenses are subject to dismissal on remand due to the State's failure to appeal the dismissal of the original indictment. The delay here appears to have been the result of a combination of factors. The victim did not come forward with allegations of the crime until February 2012, while she was still a minor. At that point, she was interviewed at the Child Advocacy Center. There was then a delay of one year before the defendant was indicted on the original charges, which the prosecution ascribed to having to coordinate with the Child Advocacy Center. It appears that trial was set for November 2013, but due to the discovery of new evidence, including witnesses, trial was delayed. The defendant at that point moved to dismiss based on the passage of time between the crime and the trial. The trial court instead continued the case, allowing the defendant to interview the victim and new witnesses. Prior to the rescheduled trial, the victim told both the prosecution and the defense that the alleged crimes occurred in 2006. At the time of the rescheduled trial in June 2014, the victim changed her testimony regarding the date of the offense; it appears from the new indictment that she also recalled additional offenses.

Accordingly, the bulk of the delay in this case is attributable to the fact that the child victim did not initially report the crime and that her memory of the events changed at some point prior to trial. Approximately one year of the delay is attributable to coordination between the prosecutor's office and the Child Advocacy Center. While the trial court did not make specific findings about this one-year delay, the prosecution did not provide any specific reason for not pursuing the case as soon as it came to the State's attention. Some additional delay was apparently necessary to locate witnesses for the effective prosecution of the case. Further delay was caused by the victim's abrupt change in testimony on the eve of trial. While the trial court found that the State "had ample opportunity to correct the indictment before [the scheduled] trial," the record does not support that conclusion, as both the prosecutor and defense counsel, who interviewed the victim approximately four months prior to the scheduled trial, agreed that the victim's allegations at that time were that the crime occurred in 2006. It appears that the reason behind the majority of the delay was the child victim's reluctance to come forward and changing memory, factors not within the control of either the State or defendant. We note that this court has found that the due process rights of the accused were not violated for delays of similar length. *See State v. Gilley*, 297 S.W.3d 739, 756 (Tenn. Crim. App. 2008) (eighteen-year delay); *see also State v. Gwendolyn Hagerman*, No. E2011-00233-CCA-R3-CD, 2013 WL 6729912, at *34 (Tenn. Crim. App. Dec. 19, 2013) (five-year

delay); *State v. Melvin Crump*, No. M2006-02244-CCA-R3-CD, 2009 WL 723524, at *16, 18 (Tenn. Crim. App. Mar. 18, 2009) (ten- to fifteen-year delay); *State v. Russell Dale Oliver*, No. E2003-00123-CCA-R3-CD, 2003 WL 22477863, at *4-5 (Tenn. Crim. App. Nov. 3, 2003) (seven-year delay).

We turn to the most significant factor, prejudice to the accused. *Carico*, 968 S.W.2d at 285. We reiterate that, unlike a speedy trial claim, a due process claim must demonstrate actual prejudice to the accused. *Utley*, 956 S.W.2d at 495. Here, the defendant testified that his uncle died between 2011 and 2012 and that his uncle "knew, or should have known something about this case." However, the defendant never stated what potential evidence was lost with his uncle. The death of the defendant's uncle apparently occurred either prior to the minor child's reporting of the crime or very soon thereafter. Likewise, the defendant testified that he was unable to locate "Peaches" and her boyfriend, but the only detail regarding these witness was that they were among the ten to fifteen people who shared the house where the rape allegedly took place. There was no evidence that their testimony would have been favorable to the defendant and nothing to explain why the other eight to thirteen people who also resided in the house could not give essentially the same testimony. We conclude that the defendant's testimony that he was not able to call certain witnesses does not, without more, demonstrate actual prejudice. *See*, *e.g.*, *Thomas Lee Carey, Jr.*, 2015 WL 1119454, at *11 (holding there was no due process violation in fourteen-year delay because "the Defendant does not identify any witnesses he was unable to locate or explain how the faded memories and 12-month incarceration for the original indictment *actually* prejudiced his defense" and because there was no evidence of delay for tactical advantage (emphasis in original)); *Gwendolyn Hagerman*, 2013 WL 6729912, at *34 (finding no actual prejudice because there was no showing that purged employment records would establish that the defendant did not commit offenses); *Jamie N. Grimes*, 2013 WL 5761301, at *5 (finding no due process violation when the defendant claimed that he lost the opportunity to locate two witnesses but "presented no evidence to establish who these witnesses were or what their testimony would have been"); *State v. Jerome Sidney Barrett*, No. M2009-02636-CCA-R3-CD, 2012 WL 2870571, at *31 (Tenn. Crim. App. July 13, 2012) (holding there was no due process violation in thirty-three-year delay when "Defendant has not identified any specific unavailable witness or evidence due to the passage of time, nor is any actual prejudice apparent" and there was no evidence of tactical delay); *State v. John P. Henretta*, No. E2007-01750-CCA-R3-DD, 2009 WL 1025828, at *16 (Tenn. Crim. App. Apr. 14, 2009) (concluding that there was no due process violation when "the defendant failed to establish that his brother could have offered mitigation testimony that was otherwise unavailable from any other source"); *Gilley*, 297 S.W.3d at 755, 756 (concluding defendant did not demonstrate actual prejudice in eighteen-year delay despite death of his father and dimming of memories, as there was evidence that the witness would not have confirmed the defendant's alibi

defense); *State v. Richard Frank D'Antonio*, No. M2003-03052-CCA-R3-CD, 2005 WL 2874657, at \*13 (Tenn. Crim. App. Oct. 26, 2005) (upholding trial court's finding of no prejudice in a thirteen-year delay when defendant showed that certain taped statements and witnesses were no longer available but trial court would have to speculate that the statements "would possibly contain exculpatory evidence favorable to the defendant"); *Antonio Dewayne Bledsoe v. State*, No. M2004-01132-CCA-R3-PC, 2005 WL 1240172, at \*4 (Tenn. Crim. App. May 24, 2005) (concluding that there was no evidence of prejudice when "Appellant failed to offer any specific testimony at the hearing that had there been no delay, witnesses would have been able to substantiate his alibi" and when there was no evidence of delay for tactical advantage); *State v. Tambora N. Simmons*, No. 03C01-9905-CR-00188, 2000 WL 190230, at \*4 (Tenn. Crim. App. Feb. 16, 2000) (finding no actual prejudice when confidential informant disappeared and the defendant "implie[d]" that she would corroborate his testimony but "never talked to her to determine what her testimony might be" and concluding that the "implication alone is not sufficient to establish *actual* prejudice due to the delay" (emphasis in original)); *State v. Hugh Peter Bondurant, Jr.*, No. M1998-00494-CCA-R10-CD, 1999 WL 1209514, at \*4 (Tenn. Crim. App. Dec. 17, 1999) (holding that "[p]otential prejudice cannot be presumed; instead it must be substantiated by the defendant with evidence in the record" and concluding that there was no showing of prejudice or tactical delay); *State v. Jimmy Ferguson*, No. 01C01-9809-CR-00359, 1999 WL 701411, at \*1-2 (Tenn. Crim. App. Sept. 10, 1999) (reversing dismissal when there was no evidence of prejudice, as witnesses whose memory may have dimmed were all described as "hostile" to the defendant, and when there was no evidence of delay for tactical reasons).

Here the trial court combined its inquiry for a speedy trial and due process violation, examining the "length of delay, reason for delay, assertion of rights and prejudice to the defendant." Accordingly, it applied an incorrect legal standard. The trial court found that the defendant "offered proof of prejudice" but made no finding regarding "the degree of prejudice, if any, to the accused." *Gray*, 917 S.W.2d at 673. As noted above, the defendant had to demonstrate actual prejudice in order to establish a due process violation. The defendant's "proof of prejudice" was merely a statement that he could not call witnesses who "knew, or should have known" "something" about the case. There was no showing of actual prejudice. Accordingly, the trial court erred in dismissing the indictment based on a violation of due process or a violation of the right to a speedy trial.

## CONCLUSION

Because the State failed to appeal the original dismissal, we remand for determination of which, if any, offenses in the second indictment constitute the same offense charged in the original indictment and for the dismissal of those charges. We

reverse the dismissal of any charges in the second indictment which constitute new offenses.

_____

JOHN EVERETT WILLIAMS, JUDGE

15