IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
December 1, 2020 Session

## STATE OF TENNESSEE v. TERRELL JACKSON

**Appeal from the Criminal Court for Shelby County**
**No. 15-03514        Lee V. Coffee, Judge**

_____

### No. W2019-01883-CCA-R3-CD

_____

A Shelby County jury convicted the defendant, Terrell Jackson, of two counts of aggravated rape. Following a sentencing hearing, the trial court imposed an effective sentence of twenty-five years in confinement at 100%. On appeal, the defendant contends the statute of limitations was not tolled during the period of time he was involuntarily residing in Louisiana, and therefore, his prosecution was barred. The defendant also argues the State delayed the testing of the victim's rape kit to obtain a tactical advantage. Upon our review of the record, arguments of the parties, and pertinent authorities, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J. Ross Dyer, J., delivered the opinion of the court, in which John Everett Williams, P.J. and Camille R. McMullen, J., joined.

Gerald S. Green, Memphis, Tennessee (on appeal) and Paul K. Guibao, Memphis, Tennessee (at trial), for the appellant, Terrell Jackson.

Herbert H. Slatery III, Attorney General and Reporter; Brent Cherry, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Dru Carpenter and Cavett Ostner, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

On November 9, 1998, the victim was scheduled to work the evening shift at Micro Ingram where she was employed as a security guard. Because she was not feeling well, the victim left her shift early and returned to the apartment she shared with her cousin,

Vanessa Bankhead. While walking to her apartment building, the victim noticed a man standing in front of the building. However, because it was not unusual to see people standing around the apartment complex, the victim did not pay attention to him. As the victim began to unlock her apartment door, she felt "a piece of metal" on her back and was forced into her apartment. Although the victim, an Army veteran, did not see a gun, she was familiar with firearms and knew how they felt.

Once inside the apartment, the victim was forced to kneel in front of a couch and told to place a blanket over her head. The victim could hear the defendant "rambling" through the apartment as he demanded money. After ransacking the apartment, the defendant forced the victim onto her knees, pulled down her pants, and penetrated her vagina with his penis. Before leaving the apartment, the defendant threatened to shoot the victim if she removed the blanket from her head. The victim waited several minutes until she was sure the defendant was gone before removing the blanket.

Ms. Bankhead, who also worked security at Micro Ingram, offered to stay and finish the victim's shift that evening. As she was preparing to close down the switchboard, Ms. Bankhead received a call from the victim, who told Ms. Bankhead that she had been raped by a man with a gun. Ms. Bankhead asked if the victim had called the police, but the victim stated that she was too scared. Ms. Bankhead then called 911 and returned to the apartment.

Officer Ronald Johnson with the Memphis Police Department ("MPD") responded to a criminal assault call at the victim's apartment. The victim advised Officer Johnson that she had been raped, and per MPD policy, Officer Johnson immediately contacted his lieutenant, who arrived at the scene a short time later.

After speaking with Officer Johnson, the victim was taken to the Rape Crisis Center for an examination. Robert Edwards, previously an officer with the MPD, was assigned to Felony Response in 1998 and met the victim at the Rape Crisis Center. However, because the victim was "extremely upset," Mr. Edwards chose not to interview her at that time.

Sandra Anderson, an expert in sexual assault examinations, performed the victim's exam. Ms. Anderson noted the victim was "tearful" during the examination and informed Ms. Anderson she was vaginally penetrated by an unknown male who had forced his way into her apartment with a gun. During the examination, Ms. Anderson collected vaginal and vulva swabs from the victim. Although she did not notice any injuries on the victim during the examination, Ms. Anderson testified it would not be unusual for the victim of a sexual assault to experience vaginal pain in the days following the assault.

Larry Colburn, previously an officer with the MPD, was assigned to the Crime Scene Unit in November 1998. Upon arrival at the victim's apartment, Mr. Colburn

processed the scene, which included dusting for fingerprints and photographing all evidence. While photographing the victim's apartment, Mr. Colburn noticed the living room and bedroom appeared to have been ransacked. Although Mr. Colburn dusted the scene for fingerprints, he did not discover any latent fingerprints during his examination.

In 2014, Detectives Joel Dunaway and Valerie Blackman were assigned to the MPD's Sex Crimes DNA Unit, which was created to address the backlog of sexual assault kits in Memphis. As part of an initiative with the Federal Bureau of Investigation ("FBI"), sixty rape kits, including the victim's, were sent to the FBI's lab for analysis. Upon receiving the results of the analysis of the victim's rape kit, the defendant was developed as a suspect, and detectives obtained buccal swabs from the defendant to compare to the DNA results from the victim's rape kit.

Tiffany Smith, a DNA analysis expert and forensic examiner with the FBI, received the victim's rape kit in November 2014. Ms. Smith assigned a forensic examiner in her lab to analyze the rape kit, which included vaginal and vulva swabs. The examination revealed the presence of male and female DNA. The victim was the female contributor, and there was a single, unknown male contributor. Although the victim's rape kit also contained a pair of underwear, they were not tested because a DNA result was obtained from the internal body swabs. In March 2016, the FBI received buccal swabs taken from the defendant. A DNA analysis was performed, and the DNA profile obtained from the buccal swabs matched the unknown contributor from the victim's vaginal and vulva swabs.

A stipulation of fact was entered into proof which stated the defendant "was not usually and publicly resident within the State of Tennessee from September 2011 until July of 2015. This stipulation is only for trial."

Following deliberations, the jury found the defendant guilty of two counts of aggravated rape. The trial court subsequently merged the convictions and sentenced the defendant to twenty-five years in confinement at 100%. The defendant filed a motion for new trial which the trial court denied. This timely appeal followed.

### *Analysis*

On appeal, the defendant argues his prosecution was barred by the fifteen-year statute of limitations. More specifically, the defendant contends that the limitations period was not tolled during the period of time he was involuntarily residing in Louisiana. The defendant also argues the MPD's delay in testing the victim's rape kit "amounts to the prosecution's delay to gain a tactical advantage." The State contends that the statute of limitations was tolled while the defendant was in Louisiana and that the defendant failed

to show the State intentionally delayed the prosecution to gain a tactical advantage. We agree with the State.

## A.    Statute of Limitations

A prosecution for a felony offense must be commenced within the statutory limitations period. Tenn. Code Ann. § 40-2-101. It is well established that the purpose of a limitations period is "to protect a defendant against delay and the use of stale evidence and to provide an incentive for efficient prosecutorial action in criminal cases." *State v. Nielsen*, 44 S.W.3d 496, 499 (Tenn. 2001). However, "[n]o period . . . during which the party charged was not usually and publicly resident within the state, is included in the period of limitation." Tenn. Code Ann. § 40-2-103.

Here, the defendant was charged with two counts of aggravated rape, a Class A felony. Tenn. Code Ann. § 39-13-502. Accordingly, the prosecution had to begin within fifteen years of the date of the offense. Tenn. Code Ann. § 40-2-101(b)(1). It is undisputed that the date of the offense was November 9, 1998, and absent tolling of the statute of limitations, the statutory limitations period expired fifteen years later on November 9, 2013. In his brief, the defendant acknowledges he was incarcerated in the Louisiana Department of Corrections from September 2011 until February 2012 and, upon his release, remained in Louisiana as a registered sex offender until his arrest in August 2015. However, the defendant argues that despite his incarceration and residency in Louisiana between 2011 and 2015, the nonresident tolling provision does not apply because he left Tennessee involuntarily and his whereabouts were known to the State.

This Court is called to review issues of statutory construction de novo with no presumption of correctness. *State v. Howard*, 504 S.W.3d 260, 267 (Tenn. 2016) (citing *State v. Dycus*, 456 S.W.3d 918, 924 (Tenn. 2015)). "The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Id.* at 269 (quoting *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995)). The intent of the legislature is determined "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000). "When the statutory language is clear and unambiguous, we apply the plain language in its normal and accepted use." *Boarman v. Jaynes*, 109 S.W.3d 286, 291 (Tenn. 2003) (citing *State v. Nelson*, 23 S.W.3d 270, 271 (Tenn. 2000)). "It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources." *In re Estate of Davis*, 308 S.W.3d 832, 837 (Tenn. 2010) (citing *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998)). "Our obligation is simply to enforce the written language." *Id.*

Tennessee Code Annotated section 40-2-103 does not define the phrase "usually and publicly resident." "'When the legislature does not provide a specific definition for a statutory term, this [C]ourt may look to other sources, including *Black's Law Dictionary*, for guidance.'" *State v. Welch*, 595 S.W.3d 615, 622 (Tenn. 2020) (quoting *State v. Ivey*, No. E2017-02278-CCA-R3-CD, 2018 WL 5279375, at *6 (Tenn. Crim. App. Oct. 23, 2018)). In looking to other sources, "[t]he words contained in a statute must be given their ordinary and common meaning." *Id.* at 623.

In this context, the word "usually" means "customarily or ordinarily;" the word "publicly" means "openly;" and the word "resident" means "living in a place for some length of time." Merriam-Webster Online Dictionary (2020) (www.merriamwebster.com). In sum, the plain and unambiguous language of the tolling provision at issue provided that the statute of limitations was tolled for any period in which a defendant was not ordinarily and openly living in Tennessee. How the defendant left the state or whether the prosecutors knew of his whereabouts is irrelevant to this definition.

The facts of this case patently show that the defendant was not ordinarily and openly living in Tennessee between September 2011 and his arrest in August 2015, and therefore, we conclude the applicable fifteen-year limitations period was tolled while the defendant was in Louisiana. Because the statute of limitations was tolled for the three years and eleven months the defendant was out of Tennessee, it did not expire until October 2017. Accordingly, the July 23, 2015 indictment was issued within the fifteen-year statute of limitations. The defendant is not entitled to relief on this issue.

## B. State's Delay to Gain Tactical Advantage

The defendant argues the State's failure to timely test the victim's rape kit amounted to a delay to gain a tactical advantage. Specifically, the defendant contends the State knew it would have a "more than usual" advantage by commencing the prosecution outside of the statute of limitations, and the State abused its discretion in failing to issue a John Doe indictment and employing extradition statutes.

The Fifth and Fourteenth Amendments to the United States Constitution and article I, section 8 of the Tennessee Constitution provide a criminal defendant with the right to due process. A delay between the commission of an offense and the initiation of formal proceedings may violate the right to due process. *State v. Gray*, 917 S.W.2d 668, 671 (Tenn. 1996).

> Before an accused is entitled to relief based upon the delay between the offense and initiation of adversarial proceedings, the accused must prove that

(a) there was a delay, (b) the accused sustained actual prejudice as a direct and proximate result of the delay, and (c) the State caused the delay in order to gain tactical advantage over or to harass the accused.

*Id.* (quoting *State v. Dykes*, 803 S.W.2d 250, 256 (Tenn. Crim. App. 1990)). Prejudice to the defendant is the most critical factor. *State v. Gilley*, 297 S.W.3d 739, 755 (Tenn. Crim. App. 2008).

In the instant case, the delay was seventeen years. The offense occurred in November 1998, and the defendant was indicted in July 2015. However, the defendant has not shown that he suffered any actual prejudice as a result of the delay or that the State caused the delay to obtain a tactical advantage over the defendant. Although the defendant argues the State knew it would have a "more than usual" advantage by indicting the defendant outside of the limitations period, he offers nothing to support this assertion. Accordingly, we conclude the defendant has not established the pre-indictment delay violated his right to a fair trial, and he is not entitled to relief on this issue.

### *Conclusion*

Based on the foregoing authorities and reasoning, the judgments of the trial court are affirmed.

_____
J. ROSS DYER, JUDGE